JAMES L. DAY (WSBA #20474)
CHRISTINE M. TOBIN-PRESSER (WSBA #27628)
JASON WAX (WSBA #41944)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel (206) 292-2110
Emails: jday@bskd.com, ctobin@bskd.com, jwax@bskd.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-01519<br><br>(Proposed Lead Case; Joint Administration Requested)<br><br>DECLARATION OF MICHAEL CHRIST IN SUPPORT OF FIRST-DAY MOTIONS |

MICHAEL CHRIST declares as follows:

1. As detailed below, I am the indirect owner of each of debtors 1 Min, LLC (as further defined herein, "EB-5 Debtor"); Hotel at Southport, LLC (as further defined herein, "Hotel Debtor"); and Twelfth Floor, LLC (as further defined herein, "Mezz Debtor") (each a "Debtor" and collectively, the "Debtors"). I have personal knowledge of the facts stated herein and I am otherwise competent to testify to them.

2. I have been a prolific real estate developer in the Seattle area for more than 34 years. I formed my development company, SECO Development, in 1989 and since

DECLARATION OF MICHAEL CHRIST – Page 1

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 1 of 16

then I have developed numerous multi-family and mixed-use properties in the greater Seattle area, and recently an office campus comprising 715,000 square feet of rentable space. My projects have received numerous awards for their thoughtful designs and execution, including the BuiltGreen Hammer Award, the highest award for multi-family housing communities over 5 stories; the Multi-Family Executive National Merit Award; and in the case of one of his projects, the Golden Nugget Award of Merit, Residential Project of the Year the Multi-Family Executive Best Re-Use of Land Award; and the Golden Nugget Grand Award for Best Mid to High Rise Apartment Project. I brought that same sense of purpose and excellence to the development of the Hotel.

**The Hotel.**

3. Debtor Hotel at Southport, LLC ("Hotel Debtor"), a Delaware limited liability company, owns real property and improvements comprising an operating hotel commonly known as the Hyatt Regency Lake Washington, located at 1053 Lk Washington Boulevard North, Renton, WA, on the shores of Lake Washington (the "Hotel"). Opened in 2017, the 12-story Hotel comprises approximately 335,000 square feet and features 347 rooms, an indoor pool, a 4,000 square foot state-of-the-art gym facility, and 60,000 square feet of indoor and outdoor meeting space and banquet facilities, including two ballrooms with lake views.

4. Hyatt Corporation ("Hyatt") has managed the Hotel since its opening as a Hyatt Regency-branded property pursuant to a Hotel Management Agreement, dated August 12, 2015 (as amended, supplemented or modified from time to time, the "Hotel Management Agreement"). Pursuant to the Hotel Management Agreement, Hyatt was

DECLARATION OF MICHAEL CHRIST – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 2 of 16

designated as Hotel Debtor's sole and exclusive agent to supervise, direct, control, manage and operate the Hotel through the term of the agreement, including but not limited to the establishment of room rates, and charges for other Hotel amenities; engagement and compensation of employees; negotiation and performance of leases, licenses and concessions related to the Hotel (subject to certain monetary caps); marketing and advertising; and to otherwise incur and pay all Hotel operating expenses when due (other than debt service and personal property taxes). In connection with its management duties and responsibilities, Hyatt works directly with all vendors, suppliers and service providers and incurs virtually all costs and expenses for managing, maintaining and operating the Hotel in its own name. Hotel Debtor does not have any contractual relationship with any of these third-party entities. The term of the Hotel Management Agreement expires on December 31, 2032.

**Ownership Structure**

5. The Debtors' ownership structure is a simple one. Hotel Debtor is a Delaware limited liability company, the sole assets of which are the real property and improvements comprising the Hotel and its related personal property, including furnishings, fixtures and equipment. Hotel Debtor is the borrower on the Senior Loan described below.

6. Hotel Debtor is wholly owned by Debtor Twelfth Floor, LLC ("Mezz Debtor"), a Delaware limited liability company. Mezz Debtor's Equity Interests in Hotel Debtor comprise Mezz Debtor's sole assets. Mezz Debtor is the borrower on the Mezz Loan described below.

DECLARATION OF MICHAEL CHRIST – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 3 of 16

7.  Mezz Debtor is wholly owned by Debtor 1 Min, LLC ("EB-5 Debtor"), a Washington limited liability company. EB-5 Debtor's Equity Interests in Mezz Debtor comprise EB-5 Debtor's sole assets. EB-Debtor is the borrower on the EB-5 Loan described below.

8.  I own all the membership interests in EB-5 Debtor.

**Debt Structure**

9.  Initial EB-5 Financing. I acquired the real property on which the Hotel would later be constructed in 2000 and funded the initial development costs from personal funds. As development progressed, significant funding was obtained through the EB-5 Immigrant Investor Program (the "EB-5 Program"), a program administered by the United States Citizenship and Immigration Services that allows foreign investors to gain permanent residence in the United States by investing the required minimum amount of capital in a domestic commercial enterprise that will create a specified minimum number of full-time jobs. To that end, in 2013 we created Southport Hotel EB-5, LLC ("EB-5 Lender"), a Washington limited partnership, to act as the regional center for raising funds through the EB-5 Program for investment in the development of the Hotel. The EB-5 Lender prepared a Private Placement Memorandum, dated November 13, 2013, seeking funding from individual investors (the "EB-5 Investors") up to a maximum amount of $115,500,000.

10.  To memorialize the terms for contributing funds for development of the Hotel (the "EB-5 Loan"), EB-5 Lender entered into a Loan Agreement, dated October 21, 2013 (as subsequently amended or supplemented, the "EB-5 Loan Agreement") with Hotel at Southport, LLC, a Washington limited liability company

DECLARATION OF MICHAEL CHRIST – Page 4

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 4 of 16

| | |
|---|---|
| 1 | ("Prior Owner").  Prior Owner secured its obligations under the EB-5 Loan Agreement |
| 2 | by way of a deed of trust (the "EB-5 Deed of Trust"), dated as of October 21, 2013, and |
| 3 | recorded on November 25, 2014, under King County Auditor's No. 20141125001447. |
| 4 | 11. EB-5 Lender launched its offering in 2014 with a target of raising |
| 5 | $115,500,000 in invested capital.  The EB-5 Investors each invested $500,000 as equity |
| 6 | in the EB-5 Lender and received a limited partnership interest in the EB-5 Lender in |
| 7 | return; the EB-5 Investors comprise all the limited partners of EB-5 Lender, and an |
| 8 | entity known as Seattle Family, LP, a Washington limited partnership, is the sole |
| 9 | general partner of the EB-5 Lender.  The offering concluded in late 2016, with a total |
| 10 | principal investment of $99,500,000 (the EB-5 Funds"). |
| 11 | 12. Starting in November 2014, EB-5 Lender began disbursing EB-5 Funds to |
| 12 | Prior Owner to fund development and construction costs pursuant to the terms of the |
| 13 | EB-5 Loan Agreement.  All funds were disbursed by 2016. |
| 14 | 13. Starwood Financing.  Due to unanticipated cost overruns, it became |
| 15 | necessary to secure additional construction financing.  In preparation for such |
| 16 | financing, on December 2, 2016, Mezz Debtor was formed as a Delaware entity, which |
| 17 | was then and remains wholly owned by EB-5 Debtor.  Next, Hotel Debtor was created |
| 18 | pursuant to the adoption and approval of a Plan of Conversion and Conversion |
| 19 | Agreement, dated as of January 13, 2017, pursuant to which Prior Owner (a |
| 20 | Washington entity) was converted to Hotel Debtor (a Delaware entity). |
| 21 | 14. In January 2017, Hotel Debtor obtained a loan from Starwood Property |
| 22 | Mortgage, LLC ("Starwood") in the principal amount of $51,100,000 (the "Original |
| 23 | Starwood Senior Loan"), secured by a first-position deed of trust encumbering the real |

DECLARATION OF MICHAEL CHRIST – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 5 of 16

property and improvements comprising the Hotel. Concurrently, Mezz Debtor obtained a loan from Starwood in the principal amount of $21,900,000 (the "Original Starwood Mezzanine Loan" and together with the Original Starwood Senior Loan, the "Original Starwood Loans")), secured by Mezz Debtor's pledge of its Equity Interests in Hotel Debtor. Both loans provided for a two-year term.

15. As a condition of the closing of the Original Starwood Loans, Hotel Debtor, EB-5 Debtor and EB-5 Lender entered into a Loan Modification and Assumption Agreement, dated January 27, 2017, pursuant to which (among other things) (i) the EB-5 Deed of Trust was reconveyed and was no longer an encumbrance against the Hotel; (ii) Hotel Debtor was released from all liability in connection with the EB-5 Loan and the EB-5 Loan Agreement; (iii) EB-5 Debtor became the new borrower in connection with the EB-5 Loan and the EB-5 Loan Agreement; and (iv) EB-5 Debtor pledged as substitute collateral for the benefit of EB-5 Lender its Equity Interests in Mezz Debtor.

16. In December 2017, Hotel Debtor entered into a Mortgage Loan and Security Agreement with Starwood for a loan of $80,000,000, the substance of which was to (i) satisfy and consolidate the Original Starwood Senior Loan and the Original Starwood Mezzanine Loan into a single loan (the "Starwood Mortgage Loan"); (ii) cause the Starwood Mortgage Loan to be secured by the Hotel; and (iii) release the pledge of Equity Interests that previously secured the Original Starwood Mezzanine Loan. In conjunction with the Starwood Mortgage Loan, Mezz Debtor obtained a loan from Argentic Real Estate Investment LLC in the amount of $25,000,000 (the

DECLARATION OF MICHAEL CHRIST – Page 6

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 6 of 16

"Argentic Mezz Loan"), which was secured by Mezz Debtor's pledge of its Equity Interests in Hotel Debtor.

17. <u>Original Senior Loan</u>. In 2019, the Debtors needed additional time and capital to complete pending projects, including waterfront improvements and a secondary access road. To that end, On or about November 6, 2019, Hotel Debtor obtained a loan from Lake Washington Co., Ltd. ("<u>Original Senior Lender</u>"), a company formed under the laws of the Republic of Korea, in the original principal amount of $90,000,000 (the "<u>Senior Loan</u>"). The Senior Loan satisfied the Starwood Mortgage Loan and is evidenced by, among other documents as evidenced by, among other things, that certain: (i) Loan Agreement, dated as of November 6, 2019, between Original Senior Lender and Hotel Debtor (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "<u>Senior Loan Agreement</u>"); and (ii) Promissory Note, dated November 6, 2019, in the original stated principal amount of $90,000,000.00 (the "<u>Senior Note</u>").

18. Hotel Debtor's obligations under the Senior Loan Agreement are secured by valid and perfected lien upon and security interests in the Hotel, together with all rents, issues, and profits generated by or proceeds received from the Hotel, and certain other real and personal property relating thereto (collectively, the "<u>Mortgaged Property</u>"), as evidenced by, among other things, that certain: (i) Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated November 6, 2019 and recorded in the Official Records of King County, Washington on November 6, 2019, as recording number 20191106001433 (the "<u>Deed of Trust</u>"); (ii) Assignment of Leases and Rents, dated November 6, 2019, and recorded in the Official Records of King

DECLARATION OF MICHAEL CHRIST – Page 7

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11 Doc 7 Filed 09/20/24 Entered 09/20/24 19:04:16 Pg 7 of 16

County, Washington on November 6, 2019 as recording number 20191106001434 ("Assignment of Rents"); (iii) UCC-1 Fixture Filing and Financing Statement, dated November 6, 2019, and recorded in the Official Records of King, County Washington on November 6, 2019 as recording number 20191106001435, and the UCC-1 financing statement recorded with the Delaware Department of State as instrument number 2019-7861052 (the "UCC-1 Filings"); (iv) a first priority interest in two bank accounts ending in 1264 and 1358; (v) Blocked Account Control Agreement, dated as of November 6, 2019 (the "BACA"); and (vi) Cash Management Agreement, dated November 6, 2019 (the "Cash Management Agreement", and together with the Senior Note, Senior Loan Agreement, Deed of Trust, Assignment of Rents, UCC-1 Filings, BACA, Cash Management Agreement, and all other agreements, certificates, and instruments executed and delivered in connection with the Senior Loan, collectively referred to as the "Original Senior Loan Documents"). Copies of the Original Senior Loan Documents identified above are attached hereto as Exhibits A-G, respectively.

19. At the same time, Mezz Debtor obtained a loan from AIP US Red Private Real Estate Trust No. 22 ("Original Mezz Lender"), an investment trust formed under the laws of the Republic of Korea, in the amount of $40,000,000 (the "Mezz Loan"). The Mezz Loan satisfied in full the Argentic Mezz Loan and is evidenced by, among other things, that certain: (i) Mezzanine Loan Agreement, dated as of November 6, 2019, between Original Mezz Lender and Mezz Debtor (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Mezz Loan Agreement"); and (ii) Promissory Note, dated as of November 6, 2019, made by Mezz Debtor in the original stated principal amount of $40,000,000.00 (the "Mezz Note").

DECLARATION OF MICHAEL CHRIST – Page 8

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 8 of 16

20. Mezz Debtor's obligations under the Mezz Loan are secured by a valid and perfected pledge of 100% of the membership interests in the ownership of the Hotel Debtor (the "Pledged Interests"), as evidenced by, among other things, that certain: (i) Pledge and Security Agreement, dated as of November 6, 2019 (the "Pledge Agreement"); (ii) the certificates of the Pledged Interests that are attached as Exhibit A to the Pledge Agreement (the "Pledged Certificates"); (iii) Acknowledgement of Pledge by Hotel Debtor, dated as of November 6, 2019 by the Hotel Debtor with respect to the Pledged Certificates (the "Acknowledgement"); (iv) Certification of Documents, dated as of November 6, 2019, made by Mezz Debtor (the "Certification"); and (v) UCC-1 Financing Statement, dated November 6, 2019, and recorded with the Delaware Department of State as instrument number 2019-7861268 (the "Mezz UCC Filing" and together with the Mezz Loan Agreement, Mezz Note, Pledge Agreement, Pledged Certificates, Acknowledgement, Certification, and all other agreements, certificates, and instruments executed and delivered in connection with the Mezz Loan, collectively referred to as the "Original Mezz Loan Documents"). Copies of each of the Original Mezz Loan Documents are attached hereto as Exhibits H-M, respectively.

21. Assignment of Senior Loan. Senior Lender is successor in interest to Original Senior Lender with respect to the Original Senior Loan Documents, as evidenced by, among other things, that certain: (i) Assignment and Assumption Agreement, dated October 26, 2021, between Original Senior Lender as assignor and Senior Lender as assignee ("Senior Loan Assignment and Assumption Agreement"); (ii) Allonge to Promissory Note, dated as of October 26, 2021, made by Original Senior Lender to Senior Lender ("Senior Note Allonge"); (iii) Assignment of Deed of Trust,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dated as of October 21, 2021, and recorded in the Official Records of King County, Washington on October 28, 2021 as recording number 20211028000996 (the "Assignment of Deed of Trust"); (iv) Assignment of Assignment of Rents, dated as of October 21, 2021, as recorded in the Official Records of King County, Washington as Instrument No. 20211028000997 (the "Assignment of the Assignment of Rents"); and (v) the UCC-3 assignment of fixture filing and financing statement recorded in the Official Records of King County, Washington on October 28, 2021, as recording number 20211028000998, and the UCC-3 financing statement recorded with the Delaware Department of State as instrument number 2021-8631369 (the "UCC-3 Filings" and together with the Senior Loan Assignment and Assumption Agreement, Senior Note Allonge, Assignment of Deed of Trust, Assignment of the Assignment of Rents, and any and all other assignments, agreements, certificates, or instruments executed and delivered in connection with the assignment of the Original Senior Loan Documents to Senior Lender, collectively referred to as the "WF Trust Senior Loan Documents"). Copies of each of the WF Trust Senior Loan Documents are attached hereto as Exhibits N-R, respectively.

22. Assignment of Mezz Loan. Mezz Lender is successor in interest to Original Mezz Lender with respect to the Original Mezz Loan Documents, as evidenced by, among other things, that certain: (i) Mezzanine Loan Assignment and Assumption Agreement, dated as of October 26, 2021, by Original Mezz Lender, as assignor, to Mezz Lender, as assignee (the "Mezz Loan Assignment"); (ii) the Allonge to the Mezz Note, dated as of October 26, 2021 made by the Original Mezz Lender to Mezz Lender (the "Mezz Note Allonge"); and (iii) UCC-3 financing statement recorded

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

on October 27, 2021, with the Delaware Department of State as instrument number 2021-8631468 (the "UCC-3 Filing" and together with Mezz Loan Assignment, Mezz Note Allonge, and any and all other assignments, agreements, certificates, or instruments executed and delivered in connection with the assignment of the Original Mezz Loan Documents to Mezz Lender, collectively referred to as the "WF Trust Mezz Loan Documents") (copies of each of the WF Trust Mezz Loan Documents are attached hereto as Exhibits S-U, respectively (the WF Trust Senior Loan Documents and the WF Trust Mezz Loan Documents, collectively referred to as the "WF Trust Loan Documents").

**Events Leading to Bankruptcy**

23. Marketing of Hotel and Selection of Buyer. The initial maturity date for both the Senior Loan and the Mezz Loan was November 10, 2022. Waterfall agreed to extend the maturity of both loans for one year, to November 10, 2023, to allow Hotel Debtor and Mezz Debtor to obtain replacement financing or sell the Hotel. Maturity was later extended to May 10, 2024 (the "Extended Maturity Date").

24. To that end, Hotel Debtor engaged CBRE Hotels to develop and execute a marketing program for the sale of the Hotel. The scope and breadth of CBRE's extensive marketing efforts are detailed in the *Declaration of John Harper* filed herewith. I closely participated in the marketing efforts and was the primary point of contact on behalf of seller Hotel Debtor. As Mr. Harper details in his Declaration, CBRE marketed the Hotel to a worldwide audience of potential buyers, more than 100 prospects executed non-disclosure agreements that led to more than a dozen property tours. After significant negotiations with the final bidders, Ohana Real Estate Investors

DECLARATION OF MICHAEL CHRIST – Page 11

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 11 of 16

("Ohana") agreed to an acquisition price of $157 million, which (after almost a year of marketing activity) I firmly believe (and CBRE agrees) is the highest and best return that can be achieved for the Hotel.

25. On March 15, 2024, Ohana and Hotel Debtor executed a purchase and sale agreement (the "Initial PSA"). Ohana later completed its due diligence and deposited $7 million of earnest money into escrow pursuant to the Initial PSA.

26. Commencement of EB-5 Litigation and Failure of Initial Sale. On March 4, 2024, less than two weeks before Hotel Debtor executed the Initial Purchase Agreement, forty-nine EB-5 Investors ("EB-5 Plaintiffs") commenced litigation in King County Superior Court, *Cai et al. v. Christ et al.,* Case No. 24-2-04850-2 SEA (the "EB-5 Lawsuit"). In the EB-5 Lawsuit, the EB-5 Plaintiffs name (among others) each of Hotel Debtor, Mezz Debtor and EB-5 Debtor as defendants. I am also named as a defendant.

27. Unfortunately, on May 7, 2024, two days prior to the scheduled closing of the Hotel sale and three days prior to the Extended Maturity Date, Ohana's title insurer raised a title exception based on the filing of the EB-5 Lawsuit. We made significant efforts to obtain the consent of the EB-5 Plaintiffs to allow the sale to proceed to closing, but we were unsuccessful. Ohana and its lender were unable to close without certainty of clear title and, without clear title, Ohana exercised its rights under the Initial Purchase Agreement to terminate the transaction and obtain the return of its earnest money.

28. The Senior Loan and Mezz Loan both matured on May 10, 2024. Waterfall sent notices of default on May 30, 2024.

DECLARATION OF MICHAEL CHRIST – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 12 of 16

29. <u>Reinstatement of Sale Upon Modified Terms</u>.  Notwithstanding the commencement of the EB-5 Lawsuit, Ohana still remained interested in acquiring the Hotel if a path forward could be identified.  After significant negotiations, my professionals and advisors, in consultation with Waterfall and Ohana, determined that the only means to proceed with a sale with the pendency of the EB-5 Lawsuit was to effectuate it through the commencement of chapter 11 bankruptcy cases.

30. Unfortunately, in the months following the execution of the Initial Purchase Agreement, the Hotel's financial performance declined.  The trailing-12 month ("<u>T-12</u>") net operating income ("<u>NOI</u>") on which the parties had based the purchase price in the Initial Purchase Agreement was $10,678,485 and the Hotel's forecasted NOI for 2024 was $12,622,682.  Just a few months later, the T-12 NOI for the period July 2023 through June 2024 declined by about $1 million to $9,621,210, and the Hotel's forecasted NOI for 2024 declined by about $1.9 million to $10,702,873.  Given this decline, the parties negotiated what I believe are reasonable and appropriate adjustments to the Initial Purchase Agreement, given the NOI decline.  The $157 million purchase price remains, modified to provide for the payment of certain of Ohana's transaction costs and expenses credited at closing, Ohana's receipt of a credit for 90% of the savings related to the transfer tax exemption, and capping Ohana's liability for vacation and sick days accrued during existing ownership's hold period at $100,000.

31. On August 29, 2024, Hotel Debtor and Ohana's designee (HRLW Hotel LLC, a Delaware limited liability company) ("<u>Hotel Buyer</u>") entered into a Reinstatement and Fourth Amendment to Purchase and Sale Agreement (Southport

DECLARATION OF MICHAEL CHRIST – Page 13

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11    Doc 7    Filed 09/20/24    Entered 09/20/24 19:04:16    Pg 13 of 16

Hotel) (as amended, the "Final Purchase Agreement") that memorialized the revised purchase terms.[1] The Final Purchase Agreement specifically conditions Purchaser's obligation to purchase the Hotel on the entry of a final order of the Bankruptcy Court (i) approving the sale pursuant to Bankruptcy Code section 363 prior to confirmation of a plan, or (ii) confirming a plan that provides for the sale of the Hotel, in both cases free and clear of all liens claims and interests.

32. I believe that the transaction set forth in the Final Purchase Agreement represents the best return for the Hotel that is attainable in this market. CBRE ran a comprehensive marketing process over the course of several months, reached out to hundreds of potential purchasers, entered into NDAs with more than 100 entities, generated competing interest from numerous buyers and negotiated a final sale transaction with Ohana. The transaction will satisfy all secured debt and (we estimate) return at least $10 million for unsecured creditor claims. In my view, there is absolutely no reason to believe that the terms of the Final Purchase Agreement are not the best terms available in the current market, nor that conducting additional marketing would do anything other than lose the opportunity for the Debtors to realize on the equity in the Hotel.

33. In furtherance of our intentions to proceed with the sale of the Hotel pursuant to the Final Purchase Agreement, the Debtors and WF Trust negotiated the terms of and executed a Plan Support and Lock-Up Agreement (the "Plan Support Agreement"). See Exhibit V. The Plan Support Agreement manifests the Debtors' and

---

[1] A copy of the Final Purchase Agreement is attached as Exhibit A to the Plan.

DECLARATION OF MICHAEL CHRIST – Page 14

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11   Doc 7   Filed 09/20/24   Entered 09/20/24 19:04:16   Pg 14 of 16

WF Trust's mutual commitments in connection with the commencement of these cases and the agreed process leading towards confirmation of a plan and the closing of the sale of the Hotel as contemplated under the Final Purchase Agreement.

34. These cases were commenced in order to effectuate the sale pursuant to the Final Purchase Agreement.

35. As of the Petition Date, the flow of funds between and among Debtors' various financial accounts is as follows: income from Hotel operations is deposited into an operating account that Hyatt maintains. That account is then used to pay all vendors and employees and nearly all hotel-related expenses in connection with Hyatt's duties and obligations under the Hotel Management Agreement. A portion of hotel income is then transferred to a reserve account that Hyatt maintains for payment of certain qualified expenditures as described in the Hotel Management Agreement. If the Debtors have owner-side expenses that will not be paid directly by the Hyatt operations team, Hyatt transfers funds sufficient to cover those expenses to Hotel Debtor's operating account (ending in 9506), from which they will be paid. Hotel Debtor's checking account ending in 1264 is a historical account with a small balance that is not actively used.

36. The Debtors' cash management system, including the two accounts that Hyatt primarily manages, are critical and integral components of the Hotel's business operations. Requiring that the Debtors and Hyatt establish a new cash management system would cause unnecessary delay and disruption, making it more difficult for the Debtors to successfully reorganize. For similar reasons, requiring the Debtors and Hyatt to open new bank accounts and to obtain new checks would also be unnecessarily

DECLARATION OF MICHAEL CHRIST – Page 15

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11   Doc 7   Filed 09/20/24   Entered 09/20/24 19:04:16   Pg 15 of 16

disruptive while providing no benefit to the estate or its creditors. Continued use of the Debtors' cash management system, bank accounts, and checks will help to ensure a smooth transition in chapter 11 and minimal disruption to the Debtors' operations.

37. The utility services provided by the Utility Providers listed on <u>Exhibit A</u> are provided to the Hotel, and Hyatt pays for these services directly out of the Hotel's operating account. Despite the operating account nominally being in the name of the Hotel Debtor, all interactions with the Utility Providers occur between Hyatt and the Utility Providers.

38. These utility services are plainly crucial to the ongoing operation of the Hotel, and the Debtors will suffer irreparable harm if Utility Providers are permitted to alter service on account of the commencement of these bankruptcy cases. The Debtors believe that Hyatt is current on its payments to each of the Utility Providers, and fully intends to timely pay all postpetition obligations.

39. The Debtors are each under common direct or indirect ownership or control and they are all part of a common business enterprise. As indicated above, Hotel Debtor is wholly owned by Mezz Debtor, which in turn is wholly owned by EB-5 Debtor. I am the sole member of EB-5 Debtor.

I declare under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 20th day of September, 2024, at Seattle, Washington.

/s/ Michael Christ
Michael Christ

DECLARATION OF MICHAEL CHRIST – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hi20h501cr

24-01519-11   Doc 7   Filed 09/20/24   Entered 09/20/24 19:04:16   Pg 16 of 16