James L. Day, WSBA #20474
Christine M. Tobin-Presser, WSBA #27628
Jason Wax, WSBA #41944
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: jday@bskd.com; ctobin@bskd.com;
jwax@bskd.com

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC,<br><br>Debtors. | No. 24-01519<br><br>JOINT DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION |

IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION RELATED TO THE PROPOSED JOINT PLAN OF REORGANIZATION WITH RESPECT TO HOTEL AT SOUTHPORT, LLC, TWELFTH FLOOR, LLC AND 1 MIN, LLC:

PLEASE READ THIS DOCUMENT WITH CARE. THIS DOCUMENT SUMMARIZES THE TERMS OF THE DEBTORS' PROPOSED PLAN OF REORGANIZATION. THE DEBTORS MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH THEIR CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT, BUT THE DEBTORS BELIEVE THAT THE PAYMENT TERMS WHICH THE DEBTORS WILL ASK THE COURT TO APPROVE WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

TO ALL PARTIES IN INTEREST:

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

On September 20, 2024 (the "Petition Date"), debtors 1 Min, LLC (as further defined herein, "EB-5 Debtor"); Hotel at Southport, LLC (as further defined herein, "Hotel Debtor"); and Twelfth Floor, LLC (as further defined herein, "Mezz Debtor"), each filed a voluntary petition commencing the above-captioned bankruptcy cases (collectively, the "Bankruptcy Case") under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the Bankruptcy Code"), in the above-captioned court (the "Bankruptcy Court" or the "Court"). The Debtors are presently acting as a debtors in possession. The Bankruptcy Case remains pending before the Bankruptcy Court.

This Disclosure Statement (the "Disclosure Statement") is jointly submitted by the Debtors and contains information with respect to *Debtors' Joint Plan of Reorganization* (the "Plan"). Pursuant to § 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you along with a copy of the proposed Plan to allow you to make an informed decision in exercising your right to accept or reject the proposed Plan. This Disclosure Statement has been approved by order of the Court pursuant to § 1125 of the Bankruptcy Code as containing information of a kind, and in sufficient detail, as far as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor to make an informed judgment about the Plan. In the event of inconsistencies between the Plan and the Disclosure Statement, however, the terms of the Plan shall control. The Court's approval of this Disclosure Statement does not constitute an endorsement of the proposed Plan by the Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTORS, THE VALUE OF ASSETS, OR THE PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT. UNLESS OTHERWISE STATED, ANY FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTORS' MANAGEMENT AND PROFESSIONAL ADVISORS AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF.

FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE AND PRUDENT BY THE DEBTORS' MANAGEMENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES. THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

STATEMENT IS WITHOUT INACCURACY.  HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

## ARTICLE I.
## INTRODUCTION

As detailed in the Plan and described below, the Debtors commenced these cases to provide a means to proceed with a pending transaction for the purchase and sale of a Hyatt Regency hotel, a transaction they were unable to consummate due to the filing of certain litigation brought by investors in a non-debtor but related entity under the EB-5 program.  The Debtors have filed the Plan to provide all parties in interest with the procedural protection the disclosure and solicitation process creates, and a platform for closing the sale following confirmation.  Upon closing, all claims against both Hotel Debtor and Mezz Debtor (totaling more than $134 million) will be paid in full, and significant funds (estimated to be about $10 million) will be distributed to EB-5 Debtor to aid in resolution of the claims of all EB-5 investors.

The Senior Loan and the Mezz Loan (both as defined below) both matured and became due and payable in May 2024.  Absent the closing of this pending sale, it is likely the secured lender will eventually foreclose on its collateral interests, and the Debtors will lose the opportunity to preserve their equity in their assets for the benefit of creditors.  The Debtors therefore urge you to accept the proposed Plan and to promptly return your completed ballot to enable your vote to be counted.

## ARTICLE II.
## DEFINITIONS

Terms used in this Disclosure Statement not specifically defined herein or in the Bankruptcy Code shall be defined as set forth in the Plan that accompanies this Disclosure Statement.  In particular, certain capitalized terms used herein shall have the meanings ascribed for such terms in Section II of the Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE III.
## BACKGROUND INFORMATION

A. **Historical Background and Events Leading to Bankruptcy Filing**

### 1. The Hotel

Debtor Hotel at Southport, LLC ("Hotel Debtor"), a Delaware limited liability company, owns real property and improvements comprising an operating hotel commonly known as the Hyatt Regency Lake Washington, located at 1053 Lake Washington Boulevard North, Renton, WA, on the shores of Lake Washington (the "Hotel"). Opened in 2017, the 12-story Hotel comprises approximately 335,000 square feet and features 347 rooms, an indoor pool, a 4,000 square foot state-of-the-art gym facility, and 60,000 square feet of indoor and outdoor meeting space and banquet facilities, including two ballrooms with lake views.

Hyatt Corporation ("Hotel Manager") has managed the Hotel since its opening pursuant to a Hotel Management Agreement, dated August 12, 2015 (as amended, supplemented or modified from time to time, the "Hotel Management Agreement"). Pursuant to the Hotel Management Agreement, Hotel Manager was designated as Hotel Debtor's sole and exclusive agent to supervise, direct, control, manage and operate the Hotel through the term of the agreement, including but not limited to the establishment of room rates, and charges for other Hotel amenities; engagement and compensation of employees; negotiation and performance of leases, licenses and concessions related to the Hotel (subject to certain monetary caps); marketing and advertising; and to otherwise incur and pay all Hotel operating expenses when due (other than debt service and personal property taxes). The term of the Hotel Management Agreement expires on December 31, 2032.

### 2. Ownership Structure

Each of the Debtors is indirectly owned by Michael Christ, a prolific real estate developer in the Seattle area. Mr. Christ formed his development company, SECO Development, in 1989 and since then has developed numerous multi-family and mixed-use properties in the greater Seattle area. His projects have received numerous awards for their thoughtful designs and execution, including the BuiltGreen Hammer Award, the highest award for multi-family housing communities over 5 stories; the Multi-Family Executive National Merit Award; and in the case of one of his projects, the Golden Nugget Award of Merit, Residential Project of the Year the Multi-Family

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Executive Best Re-Use of Land Award; and the Golden Nugget Grand Award for Best Mid to High Rise Apartment Project. Mr. Christ brought that same sense of purpose and excellence to the development of the Hotel.

The Debtors' ownership structure is a simple one. Hotel Debtor is a Delaware limited liability company, the sole assets of which are the real property and improvements comprising the Hotel and its related personal property, including furnishings, fixtures and equipment. Hotel Debtor is the borrower on the Senior Loan described below.

Hotel Debtor is wholly owned by Debtor Twelfth Floor, LLC ("Mezz Debtor"), a Delaware limited liability company. Mezz Debtor's Equity Interests in Hotel Debtor comprise Mezz Debtor's sole assets. Mezz Debtor is the borrower on the Mezz Loan described below.

Mezz Debtor is wholly owned by Debtor 1 Min, LLC ("EB-5 Debtor"), a Washington limited liability company. EB-5 Debtor's Equity Interests in Mezz Debtor comprise EB-5 Debtor's sole assets. EB-Debtor is the borrower on the EB-5 Loan described below.

EB-5 Debtor is wholly owned by Mr. Christ.

### 3. Debt Structure

**a.** **Initial EB-5 Financing.** Initial funding for development of the Hotel came from funds raised through the EB-5 Immigrant Investor Program (the "EB-5 Program"), a program administered by the United States Citizenship and Immigration Services that allows foreign investors to gain permanent residence in the United States by investing the required minimum amount of capital in a domestic commercial enterprise that will create a specified minimum number of full-time jobs. To that end, in 2013 Southport Hotel EB-5, LLC ("EB-5 Lender"), a Washington limited partnership, was formed to act as the regional center for raising funds through the EB-5 Program for investment in the development of the Hotel. The EB-5 Lender prepared a Private Placement Memorandum, dated November 13, 2013, seeking funding from individual investors (the "EB-5 Investors") up to a maximum amount of $115,500,000.

To memorialize the terms for contributing funds for development of the Hotel (the "EB-5 Loan"), EB-5 Lender entered into a Loan Agreement, dated October 21,

JOINT DISCLOSURE STATEMENT FOR DEBTORS' JOINT
PLAN OF REORGANIZATION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

24-01519-11   Doc 8   Filed 09/20/24   Entered 09/20/24 19:15:14   Pg 5 of 22

2013 (as subsequently amended or supplemented, the "EB-5 Loan Agreement") with Hotel at Southport, LLC, a Washington limited liability company ("Prior Owner"). Prior Owner secured its obligations under the EB-5 Loan Agreement by way of a deed of trust (the "EB-5 Deed of Trust"), dated as of October 21, 2013, and recorded on November 25, 2014, under King County Auditor's No. 20141125001447.

EB-5 Lender launched its offering in 2014 with a target of raising $115,500,000 in invested capital. The EB-5 Investors each invested $500,000 as equity in the EB-5 Lender and comprise all of the limited partners of EB-5 Lender; an entity known as Seattle Family, LP, a Washington limited partnership, is the sole general partner of the EB-5 Lender. The offering concluded in late 2016, with a total principal investment of $99,500,000 (the EB-5 Funds").

Starting in November 2014, EB-5 Lender began disbursing EB-5 Funds to Prior Owner to fund development and construction costs pursuant to the terms of the EB-5 Loan Agreement. All funds were disbursed by 2016.

**b.      Starwood Financing.** Due to unanticipated cost overruns, it became necessary to secure additional construction financing. In preparation for such financing, on December 2, 2016, Mezz Debtor was formed as a Delaware entity, which was then and remains wholly owned by EB-5 Debtor. Next, Hotel Debtor was created pursuant to the adoption and approval of a Plan of Conversion and Conversion Agreement, dated as of January 13, 2017, pursuant to which Prior Owner (a Washington entity) was converted to Hotel Debtor (a Delaware entity).

In January 2017, Hotel Debtor obtained a loan from Starwood Property Mortgage, LLC ("Starwood") in the principal amount of $51,100,000 (the "Original Starwood Senior Loan"), secured by a first-position deed of trust encumbering the real property and improvements comprising the Hotel. Concurrently, Mezz Debtor obtained a loan from Starwood in the principal amount of $21,900,000 (the "Original Starwood Mezzanine Loan" and together with the Original Starwood Senior Loan, the "Original Starwood Loans")), secured by Mezz Debtor's pledge of its Equity Interests in Hotel Debtor. Both loans provided for a two-year term.

As a condition of the closing of the Original Starwood Loans, Hotel Debtor, EB-5 Debtor and EB-5 Lender entered into a Loan Modification and Assumption Agreement, dated January 27, 2017, pursuant to which (among other things) (i) the EB-5 Deed of Trust was reconveyed and was no longer an encumbrance against the Hotel;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(ii) Hotel Debtor was released from all liability in connection with the EB-5 Loan and the EB-5 Loan Agreement; (iii) EB-5 Debtor became the new borrower in connection with the EB-5 Loan and the EB-5 Loan Agreement; and (iv) EB-5 Debtor pledged as substitute collateral for the benefit of EB-5 Lender its Equity Interests in Mezz Debtor.

In December 2017, Hotel Debtor entered into a Mortgage Loan and Security Agreement with Starwood for a loan of $80,000,000, the substance of which was to (i) satisfy and consolidate the Original Starwood Senior Loan and the Original Starwood Mezzanine Loan into a single loan (the "Starwood Mortgage Loan"); (ii) cause the Starwood Mortgage Loan to be secured by the Hotel; and (iii) release the pledge of Equity Interests that previously secured the Original Starwood Mezzanine Loan. In conjunction with the Starwood Mortgage Loan, Mezz Debtor obtained a loan from Argentic Real Estate Investment LLC in the amount of $25,000,000 (the "Argentic Mezz Loan"), which was secured by Mezz Debtor's pledge of its Equity Interests in Hotel Debtor. Both loans provided for a four-year term, maturing in January 2021.

    **c.**    **Original Senior and Mezz Loans.**  On or about November 6, 2019, Hotel Debtor obtained a loan from Lake Washington Co., Ltd. ("Original Senior Lender"), a company formed under the laws of the Republic of Korea, in the original principal amount of $90,000,000 (the "Senior Loan"). The Senior Loan satisfied the Starwood Mortgage Loan and is evidenced by, among other documents as evidenced by, among other things, that certain (i) Loan Agreement, dated as of November 6, 2019, between Original Senior Lender and Hotel Debtor (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Senior Loan Agreement"); and (ii) Promissory Note, dated November 6, 2019, in the original stated principal amount of $90,000,000.00 (the "Senior Note").

Hotel Debtor's obligations under the Senior Loan Agreement are secured by valid and perfected lien upon and security interests in the Hotel, together with all rents, issues, and profits generated by or proceeds received from the Hotel, and certain other real and personal property relating thereto (collectively, the "Mortgaged Property"), as evidenced by, among other things, that certain: (i) Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated November 6, 2019 and recorded in the Official Records of King County, Washington on November 6, 2019, as recording number 20191106001433 (the "Deed of Trust"); (ii) Assignment of Leases and Rents, dated November 6, 2019, and recorded in the Official Records of King County, Washington on November 6, 2019 as recording number 20191106001434 ("Assignment of Rents"); (iii) UCC-1 Fixture Filing and Financing Statement, dated

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

November 6, 2019, and recorded in the Official Records of King, County Washington on November 6, 2019 as recording number 20191106001435, and the UCC-1 financing statement recorded with the Delaware Department of State as instrument number 2019-7861052 (the "UCC-1 Filings"); (iv) a first priority interest in two bank accounts ending in 1264 and 1358; (v) Blocked Account Control Agreement, dated as of November 6, 2019 (the "BACA"); and (vi) Cash Management Agreement, dated November 6, 2019 (the "Cash Management Agreement", and together with the Senior Note, Senior Loan Agreement, Deed of Trust, Assignment of Rents, UCC-1 Filings, BACA, Cash Management Agreement, and all other agreements, certificates, and instruments executed and delivered in connection with the Senior Loan, collectively referred to as the "Original Senior Loan Documents").

At the same time, Mezz Debtor obtained a loan from AIP US Red Private Real Estate Trust No. 22 ("Original Mezz Lender"), an investment trust formed under the laws of the Republic of Korea, in the amount of $40,000,000 (the "Mezz Loan"). The Mezz Loan satisfied the Argentic Mezz Loan in full and is evidenced by, among other things, that certain: (i) Mezzanine Loan Agreement, dated as of November 6, 2019, between Original Mezz Lender and Mezz Debtor (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Mezz Loan Agreement"); and (ii) Promissory Note, dated as of November 6, 2019, made by Mezz Debtor in the original stated principal amount of $40,000,000.00 (the "Mezz Note").

Mezz Debtor's obligations under the Mezz Loan are secured by a valid and perfected pledge of 100% of the membership interests in the ownership of the Hotel Debtor (the "Pledged Interests"), as evidenced by, among other things, that certain: (i) Pledge and Security Agreement, dated as of November 6, 2019 (the "Pledge Agreement"); (ii) the certificates of the Pledged Interests that are attached as Exhibit A to the Pledge Agreement (the "Pledged Certificates"); (iii) Acknowledgement of Pledge by Hotel Debtor, dated as of November 6, 2019 by the Hotel Debtor with respect to the Pledged Certificates (the "Acknowledgement"); (iv) Certification of Documents, dated as of November 6, 2019, made by Mezz Debtor (the "Certification"); and (v) UCC-1 Financing Statement, dated November 6, 2019, and recorded with the Delaware Department of State as instrument number 2019-7861268 (the "Mezz UCC Filing" and together with the Mezz Loan Agreement, Mezz Note, Pledge Agreement, Pledged Certificates, Acknowledgement, Certification, and all other agreements, certificates, and instruments executed and delivered in connection with the Mezz Loan, collectively referred to as the "Original Mezz Loan Documents").

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Assignment of Senior Loan.  Senior Lender is successor in interest to Original Senior Lender with respect to the Original Senior Loan Documents, as evidenced by, among other things, that certain: (i) Assignment and Assumption Agreement, dated October 26, 2021, between Original Senior Lender as assignor and Senior Lender as assignee ("Senior Loan Assignment and Assumption Agreement"); (ii) Allonge to Promissory Note, dated as of October 26, 2021, made by Original Senior Lender to Senior Lender ("Senior Note Allonge"); (iii) Assignment of Deed of Trust, dated as of October 21, 2021, and recorded in the Official Records of King County, Washington on October 28, 2021 as recording number 20211028000996 (the "Assignment of Deed of Trust"); (iii) Assignment of Assignment of Rents, dated as of October 21, 2021, as recorded in the Official Records of King County, Washington as Instrument No. 20211028000997 (the "Assignment of the Assignment of Rents"); and (iv) the UCC-3 assignment of fixture filing and financing statement recorded in the Official Records of King County, Washington on October 28, 2021, as recording number 20211028000998, and the UCC-3 financing statement recorded with the Delaware Department of State as instrument number 2021-8631369 (the "UCC-3 Filings" and together with the Senior Loan Assignment and Assumption Agreement, Senior Note Allonge, Assignment of Deed of Trust, Assignment of the Assignment of Rents, and any and all other assignments, agreements, certificates, or instruments executed and delivered in connection with the assignment of the Original Senior Loan Documents to Senior Lender, collectively referred to as the "WF Trust Senior Loan Documents").

Assignment of Mezz Loan.  Mezz Lender is successor in interest to Original Mezz Lender with respect to the Original Mezz Loan Documents, as evidenced by, among other things, that certain: (i) Mezzanine Loan Assignment and Assumption Agreement, dated as of October 26, 2021, by Original Mezz Lender, as assignor, to Mezz Lender, as assignee (the "Mezz Loan Assignment"); (ii) the Allonge to the Mezz Note, dated as of October 26, 2021 made by the Original Mezz Lender to Mezz Lender (the "Mezz Note Allonge"); (b) UCC-3 financing statement recorded on October 27, 2021, with the Delaware Department of State as instrument number 2021-8631468 (the "UCC-3 Filing" and together with Mezz Loan Assignment, Mezz Note Allonge, and any and all other assignments, agreements, certificates, or instruments executed and delivered in connection with the assignment of the Original Mezz Loan Documents to Mezz Lender, collectively referred to as the "WF Trust Mezz Loan Documents") (the WF Trust Senior Loan Documents and the WF Trust Mezz Loan Documents, collectively referred to as the "WF Trust Loan Documents").

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### 4. Events Leading to Bankruptcy

**a. Marketing of Hotel and Selection of Buyer.** The initial maturity date for both the Senior Loan and the Mezz Loan was November 10, 2022. WF Trust agreed to extend the maturity of both loans for one year, to November 10, 2023, to allow Hotel Debtor and Mezz Debtor to obtain replacement financing or sell the Hotel. Maturity was later extended to May 10, 2024 (the "Extended Maturity Date").

To that end, Hotel Debtor engaged CBRE Hotels in March 2023 to prepare and execute a marketing plan to achieve the highest and best price for the Hotel. CBRE commenced the marketing process in June 2023 and, drawing on its vast experience and resources, introduced the Hotel to a worldwide collection of potential buyers, including private equity, family offices, REITs, sovereign wealth funds, and other institutional investors. CBRE was successful in its efforts, as there was broad engagement from these potential purchasers. More than 100 investor entities executed confidentiality agreements and were provided access to a data room to undertake their diligence. There were hundreds of investor questions to which CBRE responded, dozens of face-to-face presentations, and more than a dozen tours of the property by interested investors.

CBRE later conducted a multi-round call for offers process, which resulted in bids nominally ranging from $126 million to $142.5 million for an outright purchase of the Hotel. CBRE also received offers for "structured deals" that would have resulted in materially less initial proceeds but the potential for future proceeds depending on the Hotel's performance following closing. After significant time and effort negotiating with the final bidders, the strongest of the offers was from Ohana Real Estate Investors ("Ohana"). On March 15, 2024, Ohana and Hotel Debtor executed a purchase and sale agreement (the "Initial Purchase Agreement"), and Ohana later completed its due diligence and deposited $7 million of earnest money into escrow pursuant to the Initial Purchase Agreement.

**b. Commencement of EB-5 Litigation and Failure of Initial Sale.** On March 4, 2024, less than two weeks before Hotel Debtor executed the Initial Purchase Agreement, forty-nine EB-5 Investors ("EB-5 Plaintiffs") commenced litigation in King County Superior Court, *Cai et al. v. Christ et al.,* Case No 24-2-04850-2 SEA (the "EB-5 Lawsuit"). In the EB-5 Lawsuit, the EB-5 Plaintiffs name (among others) each of Hotel Debtor, Mezz Debtor and EB-5 Debtor as defendants. On May 7, 2024, two days prior to the scheduled closing of the sale of the Hotel, Ohana's title insurer raised

JOINT DISCLOSURE STATEMENT FOR DEBTORS' JOINT
PLAN OF REORGANIZATION – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

a title exception based on the filing of the EB-5 Lawsuit. Despite considerable efforts by representatives of CBRE and the seller, Hotel Debtor was unable to obtain the consent of the EB-5 Plaintiffs to allow the sale to proceed to closing. Ohana exercised its rights under the Initial Purchase Agreement to terminate the transaction and obtain the return of its earnest money.

The Senior Loan and Mezz Loan both matured on May 10, 2024. WF Trust sent notices of default on May 30, 2024.

    **c.    Reinstatement of Purchase Agreement.** Notwithstanding the commencement of the EB-5 Lawsuit, Ohana still remained interested in acquiring the Hotel if a path forward could be identified. After significant negotiations, Hotel Debtor, WF Trust and Ohana determined that the only means to proceed with a sale with the pendency of the EB-5 Lawsuit was to effectuate it through the commencement of chapter 11 bankruptcy cases.

Unfortunately, in the months following the execution of the Initial Purchase Agreement, the Hotel's financial performance declined. The trailing-12 month ("T-12") net operating income ("NOI") on which the parties had based the purchase price in the Initial Purchase Agreement was $10,678,485, while the Hotel's forecasted NOI for 2024 was $12,622,682. Just a few months later, the T-12 NOI for the period July 2023 through June 2024 declined by about $1 million, to $9,621,210, and the Hotel's forecasted NOI for 2024 declined about $1.9 million to $10,702,873. Given this decline, the parties negotiated what Hotel Debtor and CBRE consider to be reasonable and appropriate adjustments to the Initial Purchase Agreement, given the NOI decline. The $157 million purchase price remained, modified to provide for the payment of certain of Ohana's transaction costs and expenses credited at closing, Ohana's receipt of a credit for 90% of the savings related to the transfer tax exemption, and capping Ohana's liability for vacation and sick days accrued during existing ownership's hold period at $100,000.

On August 29, 2024, Hotel Debtor and Ohana's designee (HRLW Hotel LLC, a Delaware limited liability company) ("Hotel Buyer") entered into a Reinstatement and Fourth Amendment to Purchase and Sale Agreement (Southport Hotel) (as amended, the "Final Purchase Agreement") that memorialized the revised purchase terms.[1] The Fourth Amendment specifically conditions Hotel Buyer's obligation to purchase the

---

[1] A copy of the Final Purchase Agreement is attached as Exhibit A to the Plan.

JOINT DISCLOSURE STATEMENT FOR DEBTORS' JOINT
PLAN OF REORGANIZATION – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Hotel on the entry of a final order of the Bankruptcy Court (i) approving the sale pursuant to Bankruptcy Code section 363 prior to confirmation of a plan, or (ii) confirming a plan that provides for the sale of the Hotel, in both cases free and clear of all liens claims and interests.  These cases were commenced in order to effectuate the sale pursuant to the Final Purchase Agreement .

As set forth in the *Declaration of Michael Christ in Support of First-Day Motions* [ECF No. ____] and the *Declaration of John Harper* [ECF No. ____] the Debtors believe that the transaction set forth in the Final Purchase Agreement represents the best return for the Hotel that is attainable in this market.  CBRE ran a comprehensive marketing process over the course of several months, reached out to hundreds of potential purchasers, entered into NDAs with more than 100 entities, generated competing interest from numerous buyers and negotiated a final sale transaction with Ohana.  The transaction will satisfy all secured debt and (the Debtors estimate) return at least $10 million at the EB-5 Debtor level.  There does not appear to be any reason to believe that the terms of the Final Purchase Agreement are not the best terms available in the current market, nor that conducting additional marketing would do anything other than lose the Hotel Buyer transaction and the opportunity for the Debtors to realize on the equity in the Hotel.

## ARTICLE IV.
## FINANCIAL INFORMATION

### A.    Debtors' Assets

The Debtors' bankruptcy Schedules A/B reflect that, as of the Petition Date, the Debtors had the following assets:

### 1.    Hotel Debtor.

**a. Cash and cash equivalents.**  Hotel Debtor has rights in approximately $6,640,000 of funds in six (6) deposit accounts, the majority of which are in two accounts Hotel Manager controls in connection with its management of the Hotel pursuant to the Hotel Management Agreement:

| | |
|---|---|
| JP Morgan Chase Hyatt operating (6933): | $1,385,948.18 (as of 9/18/24) |
| JP Morgan Chase Hyatt reserve (9825): | $4,638,418.49 (as of 9/18/24) |
| PNC Bank escrow and reserve (2477): | $533,853.09 (as of 9/20/24) |
| PNC Bank min. bank bal. reserve (4553): | $2,659.14 (as of 9/20/24) |
| US Bank operating (9506): | $73,594 (as of August 31, 2024) |
| US Bank checking (1264): | $5,000 (as of August 31, 2024) |

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(Account balances change daily and thus the actual balance on any day other than the day indicated may be different.)

      **b. Deposits and prepayments.** Hotel Debtor has approximately $307,000 in prepaid insurance, prepaid group services, and other prepayments.

      **c. Accounts receivable.** There are outstanding accounts receivable arising from operations of the Hotel totaling approximately $1,235,000, of which Hotel Manager judges approximately $947,700 are collectible.

      **d. Real estate and improvements.** Hotel Debtor owns the real property and improvements comprising the Hotel, which secures the Senior Loan. In connection with the Final Purchase Agreement, Hotel Debtor believes that the Hotel has a value of approximately $95,000,000.[2] There has been no recent appraisal of the Hotel.

      **e. General intangibles and goodwill.** In connection with the Final Purchase Agreement, Hotel Debtor values the goodwill associated with the operation of the Hotel at approximately $54,000,000.[3] There has been no appraisal of the goodwill.

      **f. Fixtures, furnishings and equipment**. Hotel Debtor owns the extensive furniture, furnishings, equipment and other personal property used in the operations of the Hotel, which Hotel Debtor values at approximately $7,367,000.[4] There has been no appraisal of these assets.

**2. <u>Mezz Debtor</u>**

      Mezz Debtor's only asset is its one hundred percent (100%) membership interests in Hotel Debtor, which are pledged to secure the Mezz Loan. There has been no appraisal of these interests.

**3. <u>EB-5 Debtor</u>**

      EB-5 Debtor's only asset is its one hundred percent (100%) membership interests in Mezz Debtor, which are pledged to secure the EB-5 Loan. There has been no appraisal of these interests.

---

[2] This value represents the allocation of the purchase price for this component of assets to be acquired under the Final Purchase Agreement.

[3] See Footnote 2.

[4] See Footnote 2.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## B. **Debtors' Liabilities**

The Debtors' bankruptcy Schedules D/E/F reflect that, as of the Petition Date, the Debtors had the following liabilities:

### 1. **Hotel Debtor**

The Schedules reflect that the Senior Loan is the only claim against Hotel Debtor, totaling approximately $92,400,000. Hotel Manager incurs in its own name and pays in the ordinary course of business obligations in its operation of the Hotel, the balance of which changes on a daily basis. Hotel Debtor is not directly liable for these obligations, but Hotel Manager has a contingent and unliquidated right of reimbursement against Hotel Debtor under the Hotel Management Agreement.

The EB-5 Plaintiffs have named Hotel Debtor as a defendant in the EB-5 Lawsuit, but Hotel Debtor does not believe the EB-5 Plaintiffs have alleged any facts that would, if true, state any claims against Hotel Debtor. Claims stated against Hotel Debtor in the EB-5 Lawsuit, if any, are listed as disputed, contingent and unliquidated.

### 2. **Mezz Debtor**

The Schedules reflect that the Mezz Loan is the only claim against Mezz Debtor, totaling approximately $41,147,000.

The EB-5 Plaintiffs have named Mezz Debtor as a defendant in the EB-5 Lawsuit, but Mezz Debtor does not believe the EB-5 Plaintiffs have alleged any facts that would, if true, state any claims against Mezz Debtor. Claims stated against Mezz Debtor in the EB-5 Lawsuit, if any, are listed as disputed, contingent and unliquidated.

### 3. **EB-5 Debtor**

The Schedules reflect that the EB-5 Loan is the only claim against EB-5 Debtor, having a principal balance of $99,500,000.

The EB-5 Plaintiffs have named EB-5 Debtor as a defendant in the EB-5 Lawsuit. Claims stated against EB-5 Debtor in the EB-5 Lawsuit, if any, are listed as disputed, contingent and unliquidated.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# ARTICLE V.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Equity Interests shall be as follows:

## A.      Generally

The Plan establishes six Classes of Claims and three classes of Equity Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code.  If the Plan is confirmed by the Court and becomes effective, the class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such claim or interest will be treated.  The Classes defined in the proposed Plan are summarized below.  Parties in interest are urged to review the Plan carefully, as the Plan will govern the treatment of and payment terms related to each Class.

## B.      Explanation of Impaired and Unimpaired Claims

The term "Impaired" as used herein refers to those creditors to whom this Disclosure Statement (and the related Ballots and other materials delivered together herewith) are being furnished and who are entitled to accept or reject the Plan.  All Classes are impaired under the Plan, and the holders of Claims in each Class are entitled to vote to accept or reject the Plan.

The term "Unimpaired" refers to those creditors or equity holders whose claims or interests remain unaltered by the reorganization effectuated by the Plan.  Because of this favorable treatment, these creditors are conclusively deemed to have accepted the Plan.  Accordingly, under Section 1126(f) of the Bankruptcy Code, it is not necessary to solicit acceptances from the holders of claims or interests in such classes.  No Class is Unimpaired under the Plan.

## C.      Classification of Claims and Interests

### 1.      Unclassified Claims

The Bankruptcy Code automatically entitles certain types of claims to specific treatment.  Such claims are not impaired and are not entitled to vote on the Plan.  However, claimants holding such claims are entitled to object to the Plan, so long as the Plan's treatment of such claims is inconsistent with the requirements of the Bankruptcy Code.  Accordingly, the Debtor has not classified (i) Administrative Expense Claims (as described below); or (ii) Priority Tax Claims, which unsecured income,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

employment, and other taxes described by 11 U.S.C. § 507(a)(8). The treatment of Unclassified Claims is specified in the Plan.

**a.    Administrative Expense Claims.**  Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, which will primarily be comprised of the Allowed Claims of Professional Persons, and amounts owed the United States Trustee pursuant to 28 U.S.C. § 1930.  Claims incurred in the ordinary course of the Debtors' businesses following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the relevant agreements governing such obligations.  Allowed Claims of Professional Persons shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim, unless the Holder of such Claim agrees to less favorable treatment.

**b.    Priority Tax Claims.**  Priority Tax Claims are Allowed Claims of Taxing Agencies that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code.  Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties.  The Debtors do not believe there are any enforceable Priority Tax Claims in these cases.

**2.    <u>Classified Claims and Interests</u>**

<u>Class 1</u>:  Secured Claim of Senior Lender
<u>Class 2</u>:  Secured Claim of Mezz Lender
<u>Class 3</u>:  Secured Claim of Southport Hotel EB-5, LP
<u>Class 4</u>:  General Unsecured Claims - - Hotel Debtor
<u>Class 5</u>:  General Unsecured Claims - - Mezz Debtor
<u>Class 6</u>:  General Unsecured Claims - - EB-5 Debtor
<u>Class 7</u>:  Equity Interests of Mezz Debtor
<u>Class 8</u>:  Equity Interests of EB-5 Debtor
<u>Class 9</u>:  Equity Interests of Michael Christ

**ARTICLE VI.**
**SUMMARY OF MEANS FOR EXECUTION OF THE PLAN**

The Means for Execution of the Plan are detailed in Article VII of the Plan and are summarized below.  <u>This Article VI provides a summary only, and you are urged to read the Plan with care in connection with these matters.</u>

**1.    <u>Conditions Precedent to Effective Date</u>.**  The conditions precedent to the occurrence of the Effective Date of the Plan are set forth in Article VIII.B. of the Plan.

**2.    <u>Sale of Hotel</u>.**  As detailed in the Plan and following the satisfaction of all conditions precedent to the Effective Date, Hotel Debtor and Hotel Buyer shall proceed

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

with, consummate and close the Sale Transaction pursuant to the terms of the Final Purchase Agreement. Pursuant to Bankruptcy Code sections 363(b), 363(f), 365, 1123(a)(5)(D), 1141(c) and 1146(a) and other applicable authority, the conveyance and transfer of the Hotel to Hotel Buyer shall be free and clear of all liens, claims and interests of any kind whatsoever (except solely for Permitted Exceptions).

**3.** **Assumption and Assignment of Contracts.** Pursuant to Bankruptcy Code §§ 365(a) and (f), the Plan constitutes a motion to (i) assume the Hotel Management Agreement and, upon the Effective Date, assign it to Hotel Buyer; and (ii) assume the Final Purchase Agreement (together, the "Assumed Contracts"). Hotel Manager has consented to assumption of the Hotel Management Agreement and agrees that no cure will be due in connection with such assumption. Hotel Buyer has consented to the assumption of the Final Purchase Agreement and agrees that no cure will be due in connection with such assumption.

**4.** **Distribution of Sale Proceeds.** On the Effective Date, and in connection with the Closing and as detailed in the Plan, the Disbursing Agent shall use Effective Date Cash (generally, the sum of cash on hand on the Effective Date and Sale Proceeds) to (i) make payments as set forth in Article IV of the Plan, provided that no payments will be made to Holders of Disputed Claims, and (ii) establish various reserve accounts, including reserves for payment of Disputed Claims when such Claims become Allowed Claims. The Debtors shall prepare and provide to Senior Lender, Mezz Lender, EB-5 Lender and Hotel Buyer, not more than 10 days prior to the Effective Date, an estimate (and later a final determination) of Effective Date Cash, and schedules of (i) Allowed Claims to be paid in full on the Effective Date, and (ii) amounts to be reserved for later payment of various categories of Disputed Claims. The Debtors anticipate that Claims in Class 1, Class 2, Class 4 and Class 5 will be paid in full on the Effective Date, and Administrative Expense Claims, Priority Tax Claims (if any) and Fee Claims will be paid in full on or after the Effective Date, but only to the extent each such Claim is an Allowed Claim. The Debtors anticipate a significant but as yet unliquidated distribution to Class 3, and that there will be no distribution to Class 5.

**5.** **Exemption from Transfer Taxes.** Pursuant to Bankruptcy Code section 1146(a) and WAC 458-61A-207, the sale shall be exempt from any real estate excise tax, or any other tax within the scope of section 1146(a).

**6.** **Support of Lender and Hotel Buyer.** As detailed in the Plan Support Agreement, Senior Lender (holding a claim having a principal balance of $90,000,000) and Mezz Lender (holding a claim having a principal balance of $40,000,000) each supports approval of the Plan and has agreed to return a ballot cast in favor of confirmation of the Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# ARTICLE VII.
## TAX CONSEQUENCES

The federal income tax consequences of the implementation of the Plan to a Holder of a Claim will depend on a number of factors that are generally specific to each Holder, including but not limited to (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Holder of the Claim receives consideration in more than one tax year, (c) whether the Holder of the Claim is a resident of the United States, (d) whether all of the consideration by the Holder of the Claim is deemed received by that Holder of the Claim as part of an integrated transaction, (e) whether the Holder of the Claim reports income using the accrual or cash method of accounting, and (f) whether the Holder of the Claim has previously taken a bad debt or worthless security deduction with respect to the Claim. Because the Debtor has no information as to any of these factors with regard to any Holder of a Claim, the Debtor is not able to provide any prediction of the tax consequences of the implementation of the Plan as to any Holder of a Claim.

The Debtors anticipate that the tax consequences of the Plan to the Debtors will have no effect on its ability to consummate the Plan. Because the Debtors are each limited liability companies, any tax consequences arising from the consummation of the Plan will flow through to the members and will not be payable by the Debtors.

**CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, WE INFORM YOU THAT (A) ANY U.S. FEDERAL TAX INFORMATION CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF (1) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR TAX MATTER(S) ADDRESSED HEREIN, AND (B) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE DEBTORS' SOLICITING ACCEPTANCE OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.**

# ARTICLE VIII.
## LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a creditor with a right to vote accept the Plan, or, alternately, that the creditor receive under the Plan at least as much as it would receive if the debtor's assets were liquidated in and the proceeds distributed under a chapter 7 liquidation. This is generally known as the "best interests of creditors" test. As set forth below, the Plan satisfies the standard.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

To apply the test, the debtor's assets are valued in the context of a distressed liquidation in a chapter 7 case by a chapter 7 trustee appointed by the Bankruptcy Court. The estimated values take into account the costs and expenses of the liquidation, and such additional administrative and priority claims that may result from conversion of the case to a chapter 7 for the purpose of liquidation. Net liquidation proceeds would be paid to general unsecured creditors only to the extent funds are available after secured creditors have been paid the full value of their collateral and priority creditors receive full payment on their claims.

In this case, the occurrence of a hypothetical chapter 7 case would cause the Debtors' authority to use Cash Collateral to immediately cease pursuant to the terms of the order authorizing use of Cash Collateral the Debtors anticipate will be entered, and the Final Purchase Agreement would become terminable at the option of Hotel Buyer. Section 721 of the Bankruptcy Code permits the court to authorize a chapter 7 trustee to operate the business of a debtor "for a limited period" and it is possible (but not a given) that Senior Lender and Mezz Lender would negotiate a process whereby the trustee could use Cash Collateral solely to complete the Sale Transaction.

However, the claims that would be payable from sale proceeds would be significantly greater in a chapter 7 case. First, the abatement of the accrual of default-rate interest to which Senior Lender and Mezz Lender have agreed in connection with the Plan would doubtless not be provided to chapter 7 trustee. Second, a sale by a chapter 7 trustee would not be exempt from real estate excise taxes, further reducing the net return. Third, a sale by a chapter 7 trustee would introduce additional risks and unknowns for Hotel Buyer, and there seems little reason to believe that Hotel Buyer would not seek to negotiate a reduced sale price to account for such risks and unknowns – assuming it remained willing to complete a purchase. Finally, a chapter 7 trustee would be entitled to a significant commission from unencumbered sale proceeds that would not be payable under the Plan. Assuming the sale price remained at the same level, a trustee's commission would total more than $4.7 million.[5]

Under any reasonable projection, and even assuming that a sale of the Hotel would still occur, it seems likely that the gross return in connection with a sale by a chapter 7 trustee would be reduced, and creditor Claims and transaction costs would both significantly increase. Under the circumstances, it seems only Claims in

---

[5] *See* https://talkovlaw.com/bankruptcy-trustee-compensation-fee-calculator/.

JOINT DISCLOSURE STATEMENT FOR DEBTORS' JOINT
PLAN OF REORGANIZATION – Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Classes 1, 2, 4 and 5 would be paid in full, and the distribution to Class 3 would be substantially less than under the Plan.

The Plan provides for a retention of the existing Final Purchase Agreement and avoids the genuine risk that a sale of the Hotel would fail, abatement of default-rate interest on the Class 1 and Class 2 Claims, and avoids the incurrence of a significant trustee's commission. It is plain that the Plan satisfies the best interests of creditors test.

**ARTICLE IX.**
**RISK FACTORS**

Distributions to Holders of Allowed Claims contemplated under the Plan are contingent upon assumptions, some or all of which could fail to materialize and preclude the Plan from becoming effective or reduce anticipated distributions. Most important, however, is that the Plan is subject to approval by the various classes of creditors entitled to vote on the Plan pursuant to the Bankruptcy Code and to confirmation of the Plan by the Bankruptcy Court. No assurance can be given that the Plan will be accepted by the requisite number and amount of creditors or confirmed by the Court.

**ARTICLE X.**
**CONFIRMATION OF THE PLAN**

**A.    Voting Procedures**

A ballot to be used for voting your acceptance or rejection of the Plan of Reorganization is being mailed to you together with this Disclosure Statement and Plan. Holders of claims should read the instructions carefully, complete, date and sign the ballot, and transmit it in the envelope enclosed. IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS BY THE TIME PROVIDED ON THE BALLOT. FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan. For purposes of determining whether a class of claims has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**B.  Hearing on Confirmation**

The hearing on confirmation of the Plan will be set before the Honorable _____, United States Bankruptcy Judge, in U.S. Bankruptcy Court for the Eastern District of Washington in _____.  Notice of the time and date of that hearing will be provided.  The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, are satisfied.

**C.  Feasibility**

Bankruptcy Code section 1129(a)(11) requires that the Court make a finding that a proposed plan is feasible, in that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  In this case, the Plan is not dependent upon the future operating performance of the Debtors but simply the satisfaction of the conditions precedent to Confirmation and the occurrence of the Effective Date, as detailed in Article VIII.A. and B.  Given the support and commitments of the Hotel Buyer (as manifested in the Final Purchase Agreement) and WF Trust (as manifested in the Plan Support Agreement), the Debtor are confident in their ability to achieve Confirmation and consummation of the Sale Transaction.  To the extent necessary, the Debtors will present additional evidence at the hearing on Confirmation in support of such a finding.

**D.  Treatment of Dissenting Classes of Creditors**

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.  Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class. The Debtor has requested that the Court confirm the Plan even if creditors holding claims in impaired classes do not accept the Plan, on the basis that the Plan satisfies the requirements under the Bankruptcy Code for the treatment Claims in a non-accepting Class.

**E.  Effect of Confirmation of the Plan**

Pursuant to Bankruptcy Code section 1141, upon Confirmation, all property of the Estate shall be free and clear of all claims and interests of creditors, except as otherwise provided in the Plan or the Confirmation Order.  The Post-Effective Date Debtors shall be vested with all assets of the Debtors.  The provisions of the Plan shall bind the Debtors and all other parties in interest, including any Creditor of the Debtors, whether or not such Creditor is impaired under the Plan and whether or not such Creditor has accepted the Plan.  However, pursuant to section 1141(d)(3) of the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Bankruptcy Code, the Debtors and Post-Effective Date Debtors shall not obtain a discharge of claims and indebtedness that arose before the Effective Date.

DATED this 20th day of September, 2024.

/s/ Michael Christ
Michael Christ

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104