# EXHIBIT B

Docusign Envelope ID: 6E099C5F-7439-4B0D-A180-BBD7E92B32D3

**THIS PLAN SUPPORT AND LOCK-UP AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF 11 U.S.C. SECTION 1125. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS PLAN SUPPORT AND LOCK-UP AGREEMENT SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.**

## PLAN SUPPORT AND LOCK-UP AGREEMENT

This PLAN SUPPORT AND LOCK-UP AGREEMENT (including all exhibits and schedules attached hereto and incorporated herein, this "Agreement") is made and entered into as of September 20, 2024, by and between the following parties:

a)  Hotel at Southport, LLC, a Delaware limited liability company ("Hotel Debtor"); Twelfth Floor, LLC, a Delaware limited liability company ("Mezz Debtor"); and 1 Min, LLC, a Washington limited liability company ("EB-5 Debtor") (collectively, the "Debtors" and each a "Debtor");

b)  WF CREL 2020 Grantor Trust, a Delaware statutory trust, in its capacity as the beneficial holder of the lender's interest in the Senior Loan and the Mezz Loan (both as defined below) ("Lender" and together with the Debtors, the "Parties" and each a "Party").

## RECITALS

WHEREAS, Hotel Debtor and HRLW Hotel LLC, a Delaware limited liability company, the purchaser under the Purchase Agreement (as defined below) ("Purchaser") are parties to that certain Purchase and Sale Agreement, dated as of March 15, 2024, as amended by (i) the First Amendment thereto dated April 24, 2024, (ii) the Second Amendment thereto dated May 14, 2024, (iii) the Third Amendment thereto dated as of May 15, 2024, and (iv) Reinstatement and Fourth Amendment to Purchase and Sale Agreement (Southport Hotel) dated August 29, 2024 (as amended, the "Purchase Agreement"), pursuant to which Hotel Debtor has agreed to sell, and Purchaser has agreed to purchase, real property and improvements commonly known as the Hyatt Regency Lake Washington in Renton, King County, Washington (the "Property") upon the terms and conditions set forth in the Purchase Agreement;

WHEREAS, Lender is the assignee and beneficial owner of all right, title and interest in and to (i) that certain loan to Hotel Debtor in the original principal amount of $90,000,000.00, evidenced by, among other documents, that certain Loan Agreement, dated as of November 6, 2019 (the "Senior Loan"); and (ii) that certain loan to Mezz Debtor in the original principal amount of $40,000,000.00, evidenced by, among other documents, that certain Mezzanine Loan Agreement, dated as of November 6, 2019 (the "Mezz Loan") (and together with all other documents evidencing, governing and otherwise affecting the rights of the holder of the Senior Loan and the Mezz Loan, as each may be amended or supplemented from time to time, the "Loan Documents");

WHEREAS, the Debtors and the Lender have engaged in good faith, arm's-length negotiations regarding a process to obtain authority to consummate the transaction contemplated by the Purchase Agreement (the "Sale"); and

WHEREAS, the Debtors intend to commence voluntary chapter 11 reorganization cases, seek to have the cases jointly administered under the lead case of the EB-5 Debtor (the "Chapter 11 Cases") under Chapter 11 of U.S.C. title 11 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court"), to obtain confirmation of a joint plan of liquidation pursuant to which Hotel Debtor will have the authority to sell the Property free and clear of all liens, interests and encumbrances and otherwise consummate and close the Sale pursuant to the terms of a plan of liquidation (including all exhibits, appendices, and schedules thereto, as may be amended or supplemented from time to time in accordance with the terms of this Agreement, the "Plan") attached hereto as Exhibit A and the other Definitive Documentation (as defined below).

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

**Section 1. Agreement Effective Date.** This Agreement shall become effective and binding upon each of the Parties on the date (such date, the "Agreement Effective Date") on which each Party shall have executed and delivered a signature page of this Agreement in accordance with Section 10.06 hereof.

**Section 2. Exhibits Incorporated by Reference.** Each of the exhibits attached hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits. In the event of any inconsistency between this Agreement (without reference to the exhibits) and the Plan, the Plan shall govern.

**Section 3. Definitive Documentation.** The definitive documents and agreements governing the transaction contemplated by the Purchase Agreement (collectively, the "Definitive Documentation") shall consist of:

(a)     the Plan and all exhibits thereto;

(b)     the Purchase Agreement;

(c)     the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, as amended, supplemented or modified from time to time (the "Disclosure Statement") and the other solicitation materials in respect of the Plan (such materials, collectively, the "Solicitation Materials");

(d)     customary "first day" motions and proposed orders (the "First Day Pleadings") which shall include a motion and proposed order seeking use of cash collateral to fund the administration of the Chapter 11 Cases; and

(e)     the order or orders of the Bankruptcy Court entered approving the sale of the Property pursuant to the provisions of the Purchase Agreement and confirming the Plan (the "<u>Confirmation Order</u>").

Where any Definitive Documentation remains subject to negotiation and completion as of the Agreement Effective Date, such Definitive Documentation shall, upon completion, contain terms, conditions, representations, warranties, and covenants consistent with the terms of this Agreement, and shall be subject to any consent rights set forth in this Agreement and otherwise be in form and substance reasonably acceptable to the Parties.

## Section 4. Commitments Regarding the Purchase Agreement.

4.01.   <u>Commitments of the Lender.</u>

(a)     During the period beginning on the Agreement Effective Date and ending on the Termination Date (as defined in Section 7.06(a) of this Agreement) (such period, the "<u>Effective Period</u>"), Lender shall:

(i)      use good faith efforts to implement the transactions and other actions contemplated hereby in accordance with the terms of the Plan;

(ii)     support and take all actions reasonably necessary or reasonably requested by the Debtors to facilitate consummation of the Purchase Agreement in a timely and expeditious manner;

(iii)    vote each of its claims against the Debtors (as defined in Bankruptcy Code Section 101(5), the "<u>Claims</u>") to accept the Plan by delivering its duly executed and completed ballot(s) accepting the Plan on a timely basis, and shall not withdraw, amend, or revoke (or cause to be withdrawn, amended, or revoked) its vote with respect to the Plan, <u>provided,</u> that such votes shall be immediately revoked and deemed null and void *ab initio* upon termination of this Agreement other than pursuant to Section 7.02(a)(1) of this Agreement;

(iv)    (A) support the confirmation of the Plan, the transactions contemplated therein, and approval of the Disclosure Statement and the Solicitation Materials and (B) not (1) object to, delay, interfere, impede, or take any other action to delay, interfere or impede, directly or indirectly, with approval of the Plan, or approval of the Disclosure Statement or the Solicitation Materials (including joining in, supporting or encouraging any efforts to object to or oppose any of the foregoing) or (2) propose, file, support, or vote for, directly or indirectly, any restructuring, workout, plan of arrangement, alternative transaction, or liquidation including, but not limited to, a sale or foreclosure of assets, other than by way of the Purchase Agreement and the Plan;

(iv)    not commence any proceeding to oppose or alter any of the terms of the Plan or any other document filed by the Debtors in connection with the approval of the Plan (as long as such documents are consistent with the terms and conditions of this Agreement and the Purchase Agreement), <u>provided,</u> that nothing in this Agreement shall prevent a Lender

from withholding, amending, or revoking its timely consent or vote with respect to the Plan if this Agreement is terminated with respect to such Lender other than pursuant to Section 7.02(a)(1) of this Agreement;

(v)     support (and not object to) any pleadings consistent with this Agreement filed by the Debtors in furtherance of the Plan and the Purchase Agreement;

(vi)    not, nor encourage any other person or entity to, take any action, including initiating or joining in any legal proceeding that is inconsistent with this Agreement, or delay, impede, appeal, or take any other negative action, directly or indirectly, that could reasonably be expected to interfere with the approval, acceptance, confirmation, consummation, or implementation of the Plan or the Purchase Agreement, as applicable;

(vii)   use reasonable efforts to execute any document and give any notice, order, instruction, or direction necessary or reasonably requested by the Debtors that is consistent with the transactions contemplated by this Agreement and the Plan to support, facilitate, implement, consummate, or otherwise give effect to the Purchase Agreement;

(viii)  use good faith efforts to negotiate, execute and implement the Definitive Documentation on terms consistent with this Agreement; and

(ix)    not object to or opt out of any release included in the Solicitation Materials or the Plan.

(b)     Nothing contained herein shall limit

(i)     the rights of the Lender under applicable law, or in any collection or similar proceeding, including appearing as a party in interest in any matter to be adjudicated in the Chapter 11 Cases, so long as the exercise of any such right is consistent with the Lender's obligations hereunder or under the Plan as confirmed by the Bankruptcy Court;

(ii)    subject to the terms of Section 4.04 hereof, the ability of the Lender to purchase, sell or enter into any transactions in connection with its Claims, subject to the terms hereof;

(iii)   subject to the terms of Section 4.01(a) hereof, any right of a Lender under any applicable agreement, instrument or document that gives rise to any Claim of such Lender, nor shall anything contained herein be deemed to constitute a waiver or amendment of any provision of any such agreement;

(iv)    the ability of the Lender to consult with the Debtors or any creditor of the Debtors; or

(v)     the ability of the Lender to enforce any right, remedy, condition, consent or approval requirement under this Agreement or any of the Definitive Documentation.

4.02.   <u>Commitment of the Debtors.</u>

(a)     During the Effective Period, Debtors agree to:

(i)     pursue the consummation of the Purchase Agreement on the terms set forth in this Agreement and the Plan, and not execute or otherwise become a party to any agreement to or pursue any action inconsistent therewith;

(ii)     use good faith efforts to implement this Agreement and the Plan and the transactions and other actions contemplated hereby and thereby;

(iii)     (A) support and complete the Purchase Agreement and all transactions set forth in this Agreement; (B) negotiate in good faith all Definitive Documentation that are subject to negotiation as of the Agreement Effective Date; (C) execute and deliver any other required agreements to effectuate and consummate the Purchase Agreement; (D) make commercially reasonable efforts to obtain required regulatory and/or third-party approvals for consummation of the Purchase Agreement, if any; (E) consummate the Purchase Agreement in a timely and expeditious manner, and as otherwise required by this Agreement and the Definitive Documentation; (F) not undertake any actions materially inconsistent with the Purchase Agreement or the adoption and implementation of the Plan and confirmation thereof; and (G) use commercially reasonable efforts to obtain and support Bankruptcy Court approval of the Plan;

(iv)     not object to, delay, impede or take any other action that is materially inconsistent with, or is intended or is likely to interfere with, acceptance or implementation of the Purchase Agreement;

(v)     not seek to amend or modify, or file a pleading seeking authority to amend or modify, the Definitive Documentation or any other document related to the Purchase Agreement in a manner that is materially inconsistent with this Agreement;

(vi)     not file any pleading materially inconsistent with the Purchase Agreement or the terms of this Agreement; and

(vii)     not release, settle or compromise, other than in the ordinary course of business, any Claim, that is not specifically agreed to be released, settled, or compromised pursuant to this Agreement or the Plan, in a manner that is not reasonably acceptable to the Lender.

(b)     During the Effective Period, the Debtors agree to the following affirmative covenants:

(i)     the Debtors shall provide the Lender draft copies of all motions and other material pleadings or documents the Debtors intend to file with the Bankruptcy Court at least two (2) business days prior to the date when the Debtors intend to file such document (except in the case of emergency pleadings, as to which they will provide email or oral briefing to the Lender) and, if any such proposed filing may reasonably be expected to have a material effect on the Plan or the Purchase Agreement, then it shall be reasonably acceptable to the Lender in form and substance in all material respects prior to filing with the Bankruptcy Court;

(ii)     the Debtors shall request, and take reasonable actions to prosecute such request, that the Bankruptcy Court schedule the hearing to consider approval of the Plan between 30-45 days after the "Petition Date"  which shall mean the date on which the Debtors file petitions for bankruptcy under Chapter 11 of the Bankruptcy Code;

(iv)     the Debtors shall timely file a formal objection to (or otherwise address in a manner reasonably acceptable to the Lender) any unresolved motion filed with the Bankruptcy Court by a third party seeking the entry of an order (A) directing the appointment of an examiner, (B) converting the Chapter 11 Cases to liquidation, (C) dismissing the Chapter 11 Cases, or (D) seeking relief that (x) is inconsistent with this Agreement in any respect or (y) that is contrary to, or would, or would reasonably be expected to, frustrate the purposes of this Agreement, including by preventing the consummation of the Purchase Agreement;

(v)     the Debtors shall timely file a formal written response in opposition to (or otherwise address in a manner reasonably acceptable to the Lender) any objection filed with the Bankruptcy Court by any person with respect to the Cash Collateral Motion;

(vi)     the Debtors shall promptly notify the Lender in writing of any governmental or third-party complaints, litigation, investigations, or hearings (or written communications indicating that the same may be contemplated or threatened); and

(vii)     the Debtors shall promptly notify the Lender of any uncured breach by the Debtors in respect of any of the obligations, representations, warranties or covenants set forth in this Agreement by furnishing written notice to the Lender pursuant to Section 10.09 hereof within three (3) business days of actual knowledge of such breach.

(c)     Except as may be otherwise permitted under the Plan, the Debtors shall not seek, solicit, or support any dissolution, winding up, liquidation, reorganization, assignment for the benefit of creditors, merger, transaction, consolidation, business combination, joint venture, partnership sale of assets, financing (debt or equity), refinancing, or restructuring of Debtors, other than by way of the Plan and the Purchase Agreement (each, a "Nonconforming Transaction"), except with the prior written consent of the Lender.  If the Debtors, directly or indirectly, through any of their representatives or advisors, receive a bona fide proposal for an Nonconforming Transaction from any third party (who has not withdrawn such proposal) and the Debtors have determined in good faith that such Nonconforming Transaction is, or after reasonable commercial negotiations may be, higher or otherwise better than the Purchase Agreement, then the Debtors shall, within two business days of making such determination, notify the Lender of the receipt of such proposal, with such notice to include the material terms thereof, including the identity of the person or group of persons involved. The Debtors shall not enter into any confidentiality agreement with a party interested in a Nonconforming Transaction unless such party consents to identifying and providing to counsel to the Lender (under a reasonably acceptable confidentiality agreement) the foregoing information.

4.03.   Transfer of Claims.

During the Effective Period, no Lender shall sell, assign, transfer, permit the participation in, or otherwise dispose of (each, a "Transfer") any ownership of or beneficial interest in any Claims,

6

Docusign Envelope ID: 6E099C5F-7439-4B0D-A180-BBD7E92B32D3

unless the transferee thereof, prior to or contemporaneously with such Transfer, agrees in writing for the benefit of the other Parties to be bound by all of the terms of this Agreement with respect to such acquired Claim, and delivering an executed copy thereof, within two (2) business days of the closing of such Transfer, to the Parties, in which event the transferee shall be deemed to be a Party under this Agreement with respect to such transferred Claims. The Lender agrees and acknowledges that any Transfer of Claims that does not comply with the terms and procedures set forth in this Section 4.04 shall be deemed null and void *ab initio*.

4.04. <u>Representations and Warranties of Lender.</u> The Lender represents and warrants to the Debtors that:

(a)    Each Lender is the beneficial owner of the Claims, including without limitation the Senior Loan and the Mezz Loan;

(b)    Each Lender has the full power and authority to act on behalf of, vote and consent to matters concerning (i) each Lender's Claims (or direct such action, vote, or consent), and (ii) the Purchase Agreement;

(c)    Other than any consent of its lender expected to be obtained on or prior to the consummation of the Sale, the Lender's Claims are free and clear of any lien, security interest, charge, claim, equity, option, proxy, voting restriction, right of first refusal, or other limitation on disposition, transfer, or encumbrances of any kind, that would adversely affect in any material respect each Lender's ability to perform any of its obligations under this Agreement at the time such obligations are required to be performed; and

(d)    The execution, delivery, and performance of this Agreement does not and shall not: (i) violate any provision of law, rules or regulations applicable to it or any of its subsidiaries in any material respect, (ii) violate its certificate of incorporation, bylaws, or other organizational documents; or (iii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any contractual obligation to which it is a party, which violation, conflict, breach, or default, would have a material adverse effect on the Purchase Agreement.

4.05. <u>Commitment of Lender to Notify Independent Managers of Hotel Debtor and Mezz Debtor of Lack of Objection to Filing of Respective Chapter 11 Cases upon Satisfaction of Specified Conditions.</u> Upon the occurrence and continuing occurrence of each of the following conditions: (1) this Agreement having become effective and not having being terminated for any reason whatsoever, (2) the continuing effectiveness (and the absence of any termination or material modification) of the Purchase Agreement, (3) the Parties having confirmed to the reasonable satisfaction of Lender that the other Definitive Documentation is in final form and substance acceptable to them, and (4) the receipt by Lender of satisfactory evidence that the Hotel Debtor and the Mezz Debtor are authorized by all requisite corporate action (except solely for such consent of the Independent Managers) to proceed, and intend to immediately proceed, with the commencement of the Chapter 11 cases for the purpose of pursuing the sale of the Property pursuant to the provisions of the Purchase Agreement and the Plan, including with the immediate filing of the voluntary petitions commencing such cases, the Disclosure Statement, the Plan, and the First Day Pleadings, Lender shall undertake to advise the Independent Managers of each of Hotel Debtor and Mezz Debtor in writing that Lender does not object to the commencement of the

Chapter 11 Cases of Hotel Debtor and Mezz Debtor for the purpose of pursuing the sale of the Property pursuant to the provisions of the Purchase Agreement and the Plan.

**Section 5. Mutual Representations, Warranties, and Covenants.** Each of the Parties, severally and not jointly represents, warrants, and covenants to each other Party:

5.01.    Enforceability. It is validly existing and in good standing under the laws of the state or country of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

5.02.    No Consent or Approval. Except as expressly provided in this Agreement, the Plan or applicable law, no consent or approval is required by any other person or entity in order for it to effectuate the Purchase Agreement contemplated by, and perform the respective obligations under, this Agreement.

5.03.    Power and Authority. Except as expressly provided in this Agreement, it has all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to effectuate the Purchase Agreement contemplated by, and perform its respective obligations under, this Agreement.

5.04.    Governmental Consents. Except as expressly set forth herein (and subject to necessary Bankruptcy Court approval and/or regulatory approvals associated with the Purchase Agreement), the execution, delivery and performance by it of this Agreement does not, and shall not, require any registration or filing with consent or approval of, or notice to, or other action to, with or by, any federal, state, or other governmental authority or regulatory body.

**Section 6. Acknowledgement**. Notwithstanding any other provision herein, this Agreement is not and shall not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance of a plan of reorganization for purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise. Any such offer or solicitation will be made only in compliance with all applicable securities laws and provisions of the Bankruptcy Code. The Debtors will not solicit acceptances of the Plan from creditors in any manner inconsistent with any applicable law.

**Section 7. Termination Events.**

7.01.    Lender's Termination Events.

(a)    This Agreement may be terminated by a Lender by the delivery to the Debtors of a written notice in accordance with Section 10.09 hereof, upon the occurrence and continuation of any of the following events:

(i)    the breach by the Debtors of any of the representations, warranties, or covenants as set forth in this Agreement, and which breach remains uncured for a period of five (5) business days following receipt of such written notice pursuant to Section 10.09 hereof;

(ii)　　the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any injunction, judgment, decree, charge, ruling, or order enjoining the consummation of a material portion of the Purchase Agreement, or materially affecting the recovery of a Lender in an adverse manner contemplated by this Agreement; provided, that the Debtors shall have ten (10) business days after issuance of such injunction, judgment, decree, charge, ruling, or order to obtain relief that would allow consummation of the Purchase Agreement that (i) does not prevent or diminish in a material way compliance with the terms of this Agreement or (ii) is otherwise reasonably acceptable to the Lender;

(iii)　　the Debtors file any motion or pleading with the Bankruptcy Court that is materially inconsistent with this Agreement and such motion or pleading has not been withdrawn or is not otherwise denied by the Bankruptcy Court within five (5) business days of receipt of notice by such Lender that such motion for pleading is inconsistent with this Agreement;

(iv)　　the entry of a ruling or order by the Bankruptcy Court that would prevent consummation of the Purchase Agreement; provided, that the Debtors shall have five (5) business days after issuance of such ruling or order to obtain relief that (i) does not prevent or diminish in a material way compliance with the terms of this Agreement or (ii) is otherwise reasonably acceptable to the Lender;

(v)　　the conversion to a liquidation or dismissal of the Chapter 11 Case, unless such conversion to a liquidation or dismissal, as applicable, is made with the prior written consent of the Lender;

(vi)　　any of the Definitive Documentation shall have been amended or modified in a manner that materially affects the Lender in an adverse manner, without the prior written consent of the Lender;

(vii)　　the Chapter 11 Cases are not commenced before the Bankruptcy Court within the time period set forth in the Purchase Agreement;

(viii)　　the Confirmation Order has not been entered by the Bankruptcy Court within the time period set forth in the Purchase Agreement (the "Confirmation Milestone").

(b)　　Each of the milestones set forth above may be extended with the written consent of the Lender.

7.02.　　Debtors' Termination Events.

The Debtors may terminate this Agreement as to all Parties upon five (5) business days' prior written notice, delivered in accordance with Section 10.9 hereof, upon the occurrence of any of the following events:

(i) the breach by the Lender of any material provision set forth in this Agreement that remains uncured for a period of ten (10) business days after the receipt by the Lender of notice of such breach;

(ii) the board of directors, board of managers, or such similar governing body of any Debtor determines based on advice of counsel that proceeding with the Purchase Agreement would be inconsistent with the exercise of its fiduciary duties, including any determination by the such governing body, in its sole discretion, that an insufficient number or amount of acceptances of the Plan had been received as of the ballot deadline to support a decision to commence the Chapter 11 Cases; provided however, that the Lender may challenge the reasonableness of any such determination in the Bankruptcy Court, in which case, the efficacy of any termination upon such ground shall be suspended, pending the resolution of any such challenge; or

(iii) the Confirmation Order has not been entered by the Bankruptcy Court by the Confirmation Milestone.

7.03.    Mutual Termination. This Agreement, and the obligations of all Parties hereunder, may be terminated by mutual agreement between the Lender and the Debtors.

7.04.    Termination Upon Closing of the Purchase Agreement. This Agreement shall terminate automatically without any further required action or notice upon the closing and full consummation of the Purchase Agreement.

7.05.    No Termination Following Failure to Perform. No Party may terminate this Agreement if such Party failed to perform or comply in all material respects with the terms and conditions of this Agreement, with such failure to perform or comply causing, or resulting in, the occurrence of one or more termination events specified herein.

7.06.    Effect of Termination.

(a)    The date on which termination of this Agreement as to a Party is effective in accordance with Sections 7.01, 7.02, or 7.03 shall be referred to as the "Termination Date."

(b)    Except as set forth below, upon the occurrence of a Termination Date as to a Party, this Agreement shall be of no further force and effect and each Party subject to such termination shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions, whether with respect to the Purchase Agreement or otherwise, that it would have been entitled to take had it not entered into this Agreement. Upon the occurrence of a Termination Date, any and all consents or ballots tendered by the Parties subject to such termination before a Termination Date shall be deemed, for all purposes, to be null and void from the first instance and shall not be considered or otherwise used in any manner by the Parties in connection with the Purchase Agreement and this Agreement or otherwise.

(c)    Notwithstanding anything to the contrary in this Agreement, the foregoing shall not be construed to prohibit the Debtor or a Lender from contesting whether any such termination is in accordance with the terms of, or to seek enforcement of any rights under this Agreement that arose or existed before a Termination Date. Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict (a) any right of the

Debtors or the ability of the Debtors to protect and preserve theirs rights (including rights under this Agreement), remedies, and interests, and (b) any right of the Lender, or the ability of the Lender to protect and preserve their rights (including rights under this Agreement) and remedies including its claims against the Debtors.

**Section 8. Amendments**. This Agreement may not be modified, amended, or supplemented without the prior written consent of the Parties.

**Section 9. Fees and Expenses**. The Debtors agree to pay all reasonable fees and expenses incurred by Lender in accordance with the Loan Documents, provided, however, that the Debtors shall pay any such fees and expenses from funds available in connection with the closing of the Sale and the consummation of the Purchase Agreement.

**Section 10. Miscellaneous.**

10.01. Further Assurances. Subject to the other terms of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the Purchase Agreement, as applicable.

10.02. Complete Agreement. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral, or written, among the Parties with respect thereto.

10.03. Headings. The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

10.04. GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM. This Agreement shall be governed by and construed in accordance with federal bankruptcy law and the laws of the State of Washington, without regard to any conflicts of law provision which would require the application of the law of any other jurisdiction, *provided*, *however*, that the federal laws of the United States shall apply to any term of this Agreement that would be enforceable under federal law but not under the laws of Washington. By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement that is brought after the filing of the Cases and that is within the subject matter jurisdiction of the Bankruptcy Court shall be brought in the Bankruptcy Court, and that such Court shall have exclusive jurisdiction thereafter. Any other action concerning this Agreement shall be brought in the Superior Court for King County, Washington or in the U.S. District Court for the Western District of Washington at Seattle. By execution and delivery of this Agreement, each of the Parties hereby irrevocably accepts and submits itself to the nonexclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding. Nothing in this section shall limit the jurisdiction, power or authority of the Bankruptcy Court to hear any matter arising in the Cases; provided, however, that such submission to jurisdiction shall not constitute and shall not be deemed to constitute the consent by the Lender to the entry of a final order or final judgment against it in any adversary proceeding or other matter

that the bankruptcy court would not have the constitutional authority to enter any such final order or final judgment against the Lender without the Lender consent under the authority of S*tern v. Marshall*, 564 U.S. 462 (2011). Without limiting the generality of the foregoing, the Lender consents expressly does not consent to the entry by the bankruptcy court of any final order or final judgement, whether in any adversary proceeding or otherwise, awarding any type of monetary recovery against the such Lender .

10.05. <u>Trial by Jury Waiver.</u> EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

10.06. <u>Execution of Agreement.</u> This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature (including via DocuSign or similar electronic signature) and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

10.07. <u>Interpretation and Rules of Construction.</u> This Agreement is the product of negotiations among the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel.

10.08. <u>Successors and Assigns.</u> This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. There are no third-party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity.

10.09. <u>Notices.</u> All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

(a)     if to the Debtors:
        Bush Kornfeld LLP
        601 Union St., Suite 5000
        Seattle, WA 98101
        Attention:
                James L. Day
                E-mail address: jday@bskd.com

(b)     if to Lender:
        WF CREL 2020 Grantor Trust
        c/o Waterfall Asset Management
        1251 Avenue of the Americas, 50th Fl.

New York, New York 10020
Attention:
      General Counsel
      Email address: notices@waterfall.com;
              creloans@waterfall.com

with a copy to:

Mayer Brown LLP
71 South Wacker Dive
Chicago, Illinois 60606
Attention:
      Thomas S. Kiriakos and Craig E. Reimer
      Email Address: tkiriakos@mayerbrown.com;
              creimer@mayerbrown.com.

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

10.10. <u>Independent Due Diligence and Decision Making.</u> The Lender and the Debtor hereby confirms that each is (a) a sophisticated party with respect to the matters that are the subject of this Agreement, (b) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement and acknowledges and agrees that it voluntarily and of its own choice and not under coercion or duress enters into the Agreement, (c) has adequate information concerning the matters that are the subject of this Agreement and (d) has independently and without reliance upon any other Party hereto, or any of their affiliates, or any officer, employee, agent or representative thereof, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied upon each other Party's express representations, warranties, and covenants in this Agreement.

10.11. <u>Waiver.</u> If the Purchase Agreement is not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights.

10.12. <u>Automatic Stay.</u> The Debtor acknowledges and agrees, and shall not dispute, that the giving of a termination notice in accordance with Sections 7 and 10 hereof by the Lender shall not be a violation of the automatic stay under section 362 of the Bankruptcy Code (and the Debtors hereby waive, to the greatest extent possible, the applicability of such automatic stay to the giving of such notice), and the Lender and the Debtors are hereby authorized to take any steps necessary to effectuate the termination of this Agreement notwithstanding section 362 of the Bankruptcy Code or any other applicable law, and no cure period contained in this Agreement shall be extended pursuant to sections 108 or 365 of the Bankruptcy Code or any other applicable law without the prior written consent of the Lender or the Debtors, as applicable.

10.14. <u>Settlement Discussions; No Admission.</u> This Agreement and the Plan are part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties hereto. Nothing herein shall be deemed an admission of any kind. Pursuant to Federal Rule of Evidence

408 and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement. This Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever.

10.15. <u>Several, Not Joint, Claims.</u> The agreements, representations, warranties, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

10.16. <u>Severability.</u> If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

10.17. <u>Specific Performance/Remedies.</u> It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief (including attorney's fees and costs) as a remedy for any such breach, in addition to any other remedy to which such non-breaching Party may be entitled, at law or equity, without the necessity of proving the inadequacy of money damages as a remedy, including a court order requiring any Party to comply promptly with any of its obligations hereunder. Each Party agrees to waive any requirement for the securing or posting of a bond in connection with such remedy.

10.18. <u>Remedies Cumulative.</u> All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the undersigned have caused this Plan Support And Lock-Up Agreement to be duly executed and delivered under seal by their proper and duly authorized officers effective as of the date first above written.

HOTEL DEBTOR

Hotel at Southport, LLC,
a Delaware limited liability company

By:    SECO Development, Inc., a
       Washington corporation, its Manager



By: _____
Its: Member

MEZZ DEBTOR

Twelfth Floor, LLC,
a Delaware limited liability company

By:    SECO Development, Inc., a
       Washington corporation, its Manager



By: _____
Its: Member

EB-5 DEBTOR

1 Min, LLC,
a Washington limited liability company

By:    SECO Development, Inc., a
       Washington corporation, its Manager



By: _____
Its: Member

<u>LENDER</u>

WF CREL 2020 Grantor Trust,
a Delaware statutory trust

By:    1485 Management, LLC, as Trust's
Agent


    By: _____

    Its: _____

16