James L. Day, WSBA #20474
Jason Wax, WSBA #41944
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: jday@bskd.com; jwax@bskd.com

HONORABLE FREDERICK P. CORBIT

**HEARING DATE: September 23, 2025**
**HEARING TIME: 1:30 pm Pacific**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re

1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC,

Debtors.

Chapter 11

Lead Case No. 24-01519

(Jointly Administered)

DECLARATION OF JAMES L. DAY IN SUPPORT OF APPROVAL OF SETTLEMENT

JAMES L. DAY declares as follows:

1.      I am a partner at the law firm of Bush Kornfeld LLP and am principally responsible for the representation of each of the above-captioned chapter 11 debtors (collectively, the "Debtor Parties"). I have personal knowledge of the facts stated herein and I am otherwise competent to testify to them.

2.      The Debtor Parties; Michael Christ ("Christ"); WF CREL 2020 Grantor Trust ("WF Trust"); and certain individuals identified below that are plaintiffs (the "Initial Plaintiff Parties" and with the Debtor Parties, Christ and WF Trust, the "Settlement Parties") in *Lan Cai, et al. v. Christ, et al.,* Adversary No. 25-80007 (the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

"Adversary Proceeding"), have entered into a settlement that will resolve all issues in the Adversary Proceeding and in pending state court litigation brought by many of the Initial Plaintiff Parties.

3.     The Settlement Parties have prepared, negotiated and made multiple modifications to a Settlement Agreement and Release (the "Settlement Agreement"). The version that I believe will be the final version is attached hereto as Exhibit A. However, the Initial Plaintiff Parties (identified in Schedule I to the Settlement Agreement) have not all executed it, and full execution of the Settlement Agreement might not occur by the time of hearing set for September 23, 2025.  However, I believe that any further modifications will be non-material and will involve only the Initial Plaintiff Parties and Mr. Christ.

4.     Attached as Exhibit B is the proposed form of order approving the Settlement Agreement and the comprehensive settlement described therein.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 22nd day of September, 2025, at Seattle, Washington.

_/s/ *James L. Day*_
James L Day

DECLARATION OF JAMES L. DAY IN SUPPORT OF
APPROVAL OF SETTLEMENT– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

24-01519-FPC11    Doc 215    Filed 09/22/25    Entered 09/22/25 15:22:47    Pg 2 of 27

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement") is entered into as of September _, 2025 by and among (i) 1 Min, LLC (the "EB-5 Debtor"), Twelfth Floor, LLC (the "Mezz Debtor"), and Hotel at Southport, LLC (the "Hotel Debtor" and, together with the EB-5 Debtor and the Mezz Debtor, the "Debtor Parties"); (ii) Michael Christ ("Christ"); (iii) WF CREL 2020 Grantor Trust ("WF Trust"); and (iv) the individuals identified on **Schedule I** hereto (the "Initial Plaintiff Parties") and any EB-5 Plaintiff (as defined below) that subsequently delivers an executed signature page hereto to the Debtor Parties and WF Trust (collectively, the "Additional Plaintiff Parties" and, together with the Initial Plaintiff Parties, the "Plaintiff Parties"). All of the parties hereto are referred to jointly as the "Parties" and each individually as a "Party."

WHEREAS, on September 20, 2024, each of the Debtor Parties filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court"), commencing Chapter 11 cases that are pending in the Bankruptcy Court and jointly administered under Case No. 24-01519 (the "Bankruptcy Cases");

WHEREAS, on November 4, 2024, the EB-5 Plaintiffs filed proofs of claim in the Bankruptcy Cases asserting unsecured claims in the aggregate amount of $32,450,000 against each of the Debtor Parties (the "Proofs of Claim").

WHEREAS, on November 27, 2024, the Bankruptcy Court entered an order confirming the Debtor Parties' *First Amended Joint Plan of Reorganization* (the "Confirmed Plan");

WHEREAS, pursuant to the Confirmed Plan, the Hotel Debtor reserved Plan Cash (as defined in the Confirmed Plan) in the amount of $32,450,000 (the "Set-Aside"), which amount was intended to ensure a source of payment for certain asserted claims of the EB-5 Plaintiffs should they be (and to the extent that they are) subsequently allowed against the Hotel Debtor;

WHEREAS, on January 31, 2025, the seventy individual plaintiffs thereunder (the "EB-5 Plaintiffs") filed their Complaint for Damages & Claim Allowance (the "Adversary Complaint") in the Bankruptcy Court, which is pending as Adversary Proceeding No. 24-80007 (the "Adversary Proceeding");

WHEREAS, WF Trust was joined as an intervenor-defendant in the Adversary Proceeding;

WHEREAS, without admitting any liability or wrongdoing on the part of any Party, the Parties desire to resolve the claims asserted in the Adversary Complaint consensually;

NOW THEREFORE, in consideration of the below mutual covenants and agreements, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

**Section 1.     Defined Terms**.  Capitalized terms used but not defined in this Agreement have the meanings given in the Confirmed Plan.  As used in this Agreement, in addition to the terms otherwise defined herein, the following terms have the meanings set forth below:

"Approval Date" means the day on which the Settlement Order has become a Final Order.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Claims" means, with respect to any Party, all claims, counterclaims, actions, causes of action (including any relating in any manner to any existing or future litigation or investigation), suits, obligations, controversies, defenses, debts, liens, contracts, agreements, covenants, promises, liabilities, damages, penalties, demands, threats, compensation, losses, costs, judgments, orders, interest, fees or expense (including attorneys' fees and expenses) or other similar items of any kind, type, nature, character or description, whether in law, equity or otherwise, whether now known or unknown (including whether or not disclosed, concealed, sealed or hidden), whether in contract or in tort, whether choate or inchoate, whether contingent or vested, whether liquidated or unliquidated, whether fixed or unfixed, whether matured or unmatured, or whether suspected or unsuspected, of such Party or that may be asserted by such Party, through such Party or otherwise on behalf of such Party (including those which may be asserted on any derivative basis).

"Christ Financial Statement" means the schedules of current assets, liabilities, and material transactions of Christ in a form that would be filed under penalty of perjury if Christ were to file an individual bankruptcy case, which initial schedules were provided by Christ to the Plaintiff Parties on September 3, 2025.

"Disbursement Agent" means the person designated as such by the Plaintiff Parties, which may be Reid & Wise LLC.

"Final Order" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, reargument or rehearing shall then be pending or (ii) if an appeal, writ of certiorari new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

"Non-Disclosed Assets" means any material assets owned by Christ, or interests in property held by Christ, as of the date of delivery of the Christ Financial Statement, that were not identified in the Christ Financial Statement.

"Partnership" means Southport Hotel EB-5 LP.

"Person" means any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a governmental authority.

"Related Persons" means, with respect to any Person, such Person's officers, directors, employees, consultants, agents, attorneys, insurers, lenders, members, managers, subsidiary corporations, parent corporations and affiliated Persons (including generically sister corporations and related limited liability companies, managers, members, partnerships and joint venturers).

"Released Claims" means any Claim, including any Unknown Claim, that relates in any manner whatsoever to the Hotel or to any of the Debtor Parties, Christ, or WF Trust, including, without limitation, any Claims that were, or could have been, asserted in the Proofs of Claim, the Adversary Proceeding, the State Court Action, or the Bankruptcy Cases.

"Releasing Party" means each of the Plaintiff Parties, each on its own behalf and on behalf of its respective Related Persons.

"Released Party" means the Debtor Parties, Christ, WF Trust, each of the defendants in the State Court Action, and each of the respective Related Persons of each of the foregoing.

"Settlement Amount" means six million dollars ($6,000,000.00).

"Settlement Motion" means a motion filed in the Bankruptcy Court pursuant to Rule 9019 of the Bankruptcy Rules, in form and substance satisfactory to counsel to the Parties, seeking entry of the Settlement Order.

"Settlement Order" means an order of the Bankruptcy Court substantially in the form attached hereto as Exhibit A: (a) approving the Debtor Parties' entry into and implementation of this Agreement; (b) providing that the EB-5 Plaintiffs collectively have an allowed general unsecured claim against Hotel Debtor in the amount of the Settlement Amount; (c) providing that WF Trust has an allowed secured claim against Mezz Debtor, classified as a Class 2 Claim under the Confirmed Plan, in an amount not less than twenty-seven million six hundred thousand dollars ($27,600,000); (d) providing that the Settlement Amount shall be the sole source of recovery for any Released Claims held by any of the EB-5 Plaintiffs; and (e) dismissing the Adversary Complaint with prejudice other than with respect to any of the Unrepresented Plaintiffs that is not a Plaintiff Party.

"State Court Action" means the proceeding pending in the Superior Court of the State of Washington in and for King County as Case No. 24-2-04850-2 styled Lan Cai et

3

al. v. Michael Christ, Seattle Family, LP, Southport Management LLC, Hotel at Southport, LLC, Twelfth Floor, LLC, 1 Min LLC, Seco Development, Inc., John Does 1-10 and Doe Entities 1-10.

"Unknown Claims" means any Claim that any Party does not know or suspect to exist in such Party's favor at the time of the release of such Claims, including any such Claim that might be or is concealed, sealed, or hidden, which, if known by such Party, might have affected such Party's decision(s) with respect to this Agreement.

"Unrepresented Plaintiff Reserve" means $550,000 or a lesser amount set by the Bankruptcy Court retained in the Set-Aside pursuant to Section 2 hereof for each of the Unrepresented Plaintiffs that has not become an Additional Plaintiff Party as of the Approval Date.

"Unrepresented Plaintiffs" means each of the EB-5 Plaintiffs, as identified on **Schedule II** hereto, that is not an Initial Plaintiff Party.

**Section 2.** **Settlement Process**.

(a) Settlement Motion. No later than September 8, 2025, the Debtor Parties shall file the Settlement Motion in the Bankruptcy Court. Each of the Parties agrees to support, or direct its counsel to support, the Bankruptcy Court's entry of the Settlement Order. Without limiting the generality of the foregoing, each of the Plaintiff Parties agrees that it will not oppose the allowance of the Class 2 Claim of WF Trust as set forth in the Settlement Order.

(b) Distribution to WF Trust. No later than three (3) business days following the Approval Date, the Hotel Debtor shall distribute all amounts held in the Set-Aside other than the Settlement Amount to WF Trust in immediately available funds using wire instructions provided by WF Trust for application to the allowed Class 2 Claim (as defined in the Confirmed Plan) of WF Trust. Should, as expected, such distribution be less than the amount of the allowed Class 2 Claim, such distribution shall not be in satisfaction of any such deficiency, but, instead, WF Trust shall remain and be entitled to receive payment of any such deficiency from the proceeds of any other estate assets not necessary to adequately fund the Partnership pursuant to Section 6(a) hereof. Such distribution shall be irrevocable and none of the EB-5 Plaintiffs shall have any right to seek to recover such funds (or any other funds distributed to WF Trust in connection with the Debtor Parties or the Bankruptcy Cases) from WF Trust for any reason.

(c) Distributions to Plaintiff Parties.

　　　i. If all of the Unrepresented Plaintiffs have become Additional Plaintiff Parties on or before the Approval Date, then, as soon as reasonably practicable thereafter, the Hotel Debtor shall distribute the Settlement Amount to the Plaintiff Parties in a manner as Plaintiff Parties shall direct in writing.

　　　ii. If any Unrepresented Plaintiffs have not become Additional Plaintiff Parties as of the Approval Date, (A) the Unrepresented Plaintiff Reserve shall be the sole source of funds for any potential recovery by such Unrepresented Plaintiffs and the Hotel Debtor shall maintain the Unrepresented Plaintiff Reserve until such

4

time that such Unrepresented Plaintiffs have become Additional Plaintiff Parties or have otherwise resolved their claims in the Adversary Proceeding, or as otherwise ordered by the Bankruptcy Court and (B) the Hotel Debtor shall distribute the Settlement Amount less the Unrepresented Plaintiff Reserve to the Plaintiff Parties as soon as reasonably practicable following the Approval Date. As soon as reasonably practicable following the time that any Unrepresented Plaintiff becomes an Additional Plaintiff Party or otherwise resolves its claims against the Hotel Debtor, the Hotel Debtor shall make a supplemental distribution from the Unrepresented Plaintiff Reserve to such Unrepresented Plaintiff of an amount sufficient to satisfy any recovery by the Unrepresented Plaintiff and, to the extent that such Unrepresented Plaintiff has become an Additional Plaintiff Party or has resolved its claims against the Hotel Debtor for less than $550,000, to the other Plaintiff Parties.

iii. Any distribution to the Plaintiff Parties hereunder shall be made in an amount or amounts necessary to ensure that the Plaintiff Parties receive their respective portion of the Settlement Amount (or of the portion of the Settlement Amount distributable to the Plaintiff Parties) on a *pro rata* basis, unless any individual EB-5 Plaintiff has waived their right to receive any distribution (for immigration reasons or otherwise) and has confirmed this in writing to counsel to such EB-5 Plaintiff.

iv. Any distribution to be made to the Plaintiff Parties hereunder may be made (A) directly by the Hotel Debtor to the Plaintiff Parties; (B) to the Disbursement Agent (if one has been designated) for further distribution to the Plaintiff Parties; or (C) as to any Plaintiff Party that has requested that its share of any distributions be delayed or waived entirely, to a separate escrow account maintained by Disbursement Agent until the time of such resolution; provided that no more than one such escrow account shall be required to be maintained pursuant to this Agreement.

(d)     Dismissal of Adversary Complaint by Additional Plaintiff Parties. Any Unrepresented Plaintiff that becomes an Additional Plaintiff Party following the Approval Date shall take all steps necessary to cause the dismissal with prejudice of the Adversary Complaint within three (3) business days following the date that it becomes an Additional Plaintiff Party.

(e)     Dismissal of State Court Action. Not later than three (3) business days following the Approval Date, each of the Plaintiff Parties party thereto shall take all steps necessary to cause the dismissal with prejudice of its claims against all defendants in the State Court Action; provided that any Unrepresented Plaintiff that becomes an Additional Plaintiff Party following the Approval Date shall take all steps necessary to cause the dismissal with prejudice of the State Court Action within three (3) business days following the date that it becomes an Additional Plaintiff Party.

(f)     Payments to WF Trust Final. For the avoidance of doubt, the joinder or nonjoinder of any Unrepresented Plaintiffs to this Agreement as Additional Plaintiff Parties shall not increase the Settlement Amount, alter the amounts payable by any of the Debtor Parties on account of the

Released Claims, or alter in any way the amount or timing of amounts payable to WF Trust, whether pursuant to Section 2(b) or otherwise.

**Section 3.** **No Admission of Liability.** It is understood and agreed by the Parties that this Agreement is a settlement of disputed claims. The Parties agree that this settlement does not constitute an admission of liability or wrongdoing on the part of any Party as to any of the claims made in the Adversary Complaint or any other conduct. Nor shall this Agreement constitute an admission by any Party of any fact or principle of law.

**Section 4.** **Releases.**

    (a)    Effective immediately upon the Approval Date, without any notice or action otherwise being required from or by any Party, each of the Releasing Parties knowingly and voluntarily, unconditionally and irrevocably, and absolutely, finally, and forever, releases, acquits, and discharges each of the Released Parties from and against any and all Released Claims. For the avoidance of doubt, nothing in this Section 4 releases (i) any Claims arising under this Agreement or (ii) any Claims against Christ for any false statement in the Christ Financial Statement regarding Non-Disclosed Assets (it being understood that the aggregate damages for any such claims shall not exceed the value of any such Non-Disclosed Assets and that Michael Christ shall not raise any statute of limitations, release, indemnification or other comparable legal defenses to avoid any damages owed to the Plaintiff Parties related to any Non-Disclosed Assets).

    (b)    AFTER CONSULTATION WITH COUNSEL, THE PARTIES EXPRESSLY WAIVE TO THE EXTENT THEY MAY APPLY, ANY AND ALL PROVISIONS, RIGHTS AND BENEFITS CONFERRED BY CALIFORNIA CIVIL CODE § 1542 AND ALSO BY ANY LAW OF ANY OTHER STATE OR TERRITORY OF THE UNITED STATES, OR PRINCIPLE OF FEDERAL OR COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR EQUIVALENT TO CALIFORNIA CIVIL CODE § 1542, WHICH SECTION READS AS FOLLOWS:

    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

THE PARTIES ACKNOWLEDGE, AND THE RELEASING PARTIES BY OPERATION OF LAW SHALL BE DEEMED TO HAVE ACKNOWLEDGED, THAT THE INCLUSION OF UNKNOWN CLAIMS IN THE RELEASE WAS SEPARATELY BARGAINED FOR AND WAS AN ESSENTIAL ELEMENT OF THIS AGREEMENT.

**Section 5.** **Covenant Not to Sue.** Effective immediately upon the Approval Date, each of the Releasing Parties covenants not to sue or file any action, claim, complaint, charge, lawsuit, or arbitration in any forum against any of the Released Parties based on any of the Released Claims. For the avoidance of doubt, nothing in this Section 5 precludes any Party from taking any action to enforce the terms of this Agreement or precludes the Plaintiff Parties from taking any such

action with respect to (and solely to the extent of the value of) any Non-Disclosed Assets or the proceeds thereof against Christ or any transferee of such Non-Disclosed Assets.

**Section 6.**     **The Partnership.**

(a)     After the Approval Date, the Debtors will undertake to adequately fund the Partnership per a budget reasonably acceptable to WF Trust and the Plaintiff Parties to the extent necessary to permit the Partnership to comply with U.S. Citizenship and Immigration Services requirements and continue to process immigration applications, including those of the EB-5 Plaintiffs.

(b)     Within 60 days of the Approval Date, Michael Christ will agree to the appointment of an independent manager satisfactory to the Plaintiff Parties to manage the Partnership (the "Independent Manager"). Such appointment may come in the form of a new General Partner for the Partnership. The Plaintiff Parties will represent and warrant that the Independent Manager is qualified to address the U.S. Citizenship and Immigration Services requirements and agree that Christ shall not be responsible for compliance with such requirements after the date of the appointment of the Independent Manager. Michael Christ shall provide reasonable cooperation and documentation to the Independent Manager to assist in the transition of the Independent Manager to manage the Partnership.

(c)     Each of the Parties agrees that it will not take any actions to interfere with the EB-5 investors current or future immigration applications made in connection with their respective investments in the Partnership. Christ or the Independent Manager, as applicable (Christ until such date as the Independent Manager has been appointed and the Independent Manager thereafter), shall take reasonable efforts to cause the Partnership to (i) timely issue K-1 tax forms to each of the EB-5 investors in the Partnership and (ii) provide the EB-5 investors in the Partnership with all documents reasonably needed in connection with such investors' I-526 and/or I-829 immigration petitions, including in connection with any documentation requests in connection therewith from U.S. Citizenship and Immigration Services and (iii) complete all mandatory USCIS filings on behalf of any EB-5 investor in the Partnership as required by USCIS and provide notification to each EB-5 investor when such filings have been submitted to USCIS, including any required job creation documentation. To the extent any K-1 tax forms for tax year 2024 or any prior year have not yet been issued to any Plaintiff Party, Christ and the Partnership shall ensure that such forms are issued to such Plaintiff Parties as soon as reasonably possible and no later than 30 days after the Approval Date. Christ shall not destroy and shall take reasonable efforts to ensure that all existing documentation necessary for any EB-5 investor's USCIS immigration application is preserved and made available to the Independent Manager and shall reasonably cooperate with the Independent Manager to ensure the Independent Manager has all required documents necessary to comply with USCIS requirements.

(d)     The Parties acknowledge and agree that the payment of the Settlement Amount to the Plaintiff Parties is solely as settlement of the claims asserted in the Adversary Proceeding and the State Court Action, and shall not be deemed to be a distribution by any of the Debtor Parties to the Partnership or a distribution by the Partnership to the Plaintiff Parties. Without limiting any other releases in this Agreement, once the Settlement Amount is distributed in accordance with Section 2 of this Agreement, the Releasing Parties shall release the Released Parties from all

potential claims related to how such Settlement Amount is characterized by any governmental entity.

**Section 7.** **Effectiveness.** This Agreement shall be binding on the Plaintiff Parties upon each such party's execution hereof, subject to entry of the Settlement Order. This Agreement shall be binding on the Debtor Parties, Christ, and WF Trust only upon entry of the Settlement Order. In the event the Settlement Motion is denied, or the Settlement Order does not become a Final Order, this Agreement shall be null and void. In the event this Agreement is modified by order of the Bankruptcy Court or any other court of competent jurisdiction in a manner that affects the rights of WF Trust without the prior approval of WF Trust, WF Trust may elect to declare this Agreement null and void.

**Section 8.** **Review of Translation**. Each of the Plaintiff Parties that has reviewed a copy of this Agreement translated into a language other than English acknowledges and agrees that, in the event of a conflict between the terms of this Agreement and any translation thereof, the terms of this Agreement shall govern, and no Plaintiff Party shall have any recourse to any other Party in the event of any error in such translation.

**Section 9.** **Authority to Execute Agreement; Subsequent Agreement.** Each Party executing this Agreement warrants and represents that it has the specific authority to enter into and execute this Agreement and bind the Party represented.

**Section 10.** **Entire Agreement.** This Agreement is final and binding and constitutes the entire agreement of the Parties as to the subject matter hereof and supersedes all previous oral or written agreements among the Parties as to the subject matter hereof.

**Section 11.** **Modifications.** No change, alteration or modification of this Agreement may be made except in writing signed by all Parties and, to the extent necessary approved by the Bankruptcy Court.

**Section 12.** **Legal Counsel.** Each Party acknowledges that it has had this Agreement reviewed by the counsel of its choice and has been fully advised as to the legal effect thereof. The Parties agree that attorneys for each Party have participated in the drafting of this Agreement and that no Party will be deemed the drafter of this Agreement with respect to assumptions in the law. Each Party enters into this Agreement voluntarily, without any coercion or duress, and with a full understanding of the terms of this Agreement.

**Section 13.** **Copies.** This Agreement may be executed in multiple counterparts, each bearing the signature of one or more Parties. Any copy bearing the signature of the Party to be charged may be deemed an original. Facsimile and scanned electronic copies of original signatures shall have the same force and effect as the original signatures.

**Section 14.** **Governing Law; Jurisdiction; Jury Trial Waiver**. Any dispute, controversy or claim arising out of or relating to this Agreement, including with respect to the existence of such Agreement and/or the performance of any Party hereunder (a "Dispute"), shall be governed by Washington law, without regard to its choice-of-law principles. Each Party agrees that the Bankruptcy Court shall retain exclusive jurisdiction to hear and resolve any Dispute other than any Dispute in connection with the Christ Financial Statement or relating to Non-Disclosed Assets.

Each Party (i) consents to the Bankruptcy Court's entry of the Settlement Order on a final basis and the Bankruptcy Court's entry of a final order with respect to any Dispute (other than in connection with the Christ Financial Statement or relating to Non-Disclosed Assets) and (ii) acknowledges and agrees that the Bankruptcy Court has jurisdiction to enter any such order. EACH OF THE PARTIES, HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL OF ITS CHOICE, HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION, ACTION, PROCEEDING, COUNTERCLAIM, OR OTHER JUDICIAL PROCESS (WHETHER SOUNDING IN CONTRACT, TORT, STATUTE, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH (A) THIS AGREEMENT; (B) ANY NEGOTIATIONS, DISCUSSIONS, OR COMMUNICATIONS CONCERNING THIS AGREEMENT; (C) THE ENFORCEMENT OF THIS AGREEMENT; OR (D) ANY TRANSACTIONS, CONDUCT, OR COURSE OF DEALING CONTEMPLATED BY, REFERENCED IN, OR EXECUTED PURSUANT TO THIS AGREEMENT. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR EACH PARTY TO ENTER INTO AND PERFORM UNDER THIS AGREEMENT. THIS JURY-TRIAL WAIVER SHALL BE ENFORCEABLE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW AND SHALL SURVIVE THE TERMINATION, RESCISSION, FULFILLMENT, OR EXPIRATION OF THIS AGREEMENT.

**Section 15.    Severability.**  In the event that any term, provision, or condition contained in this Agreement shall be determined to be void, invalid, unenforceable or against public policy, that term, provision or condition shall be eliminated or stricken, and the remaining terms, provisions or conditions hereof shall not be affected or impaired and shall remain in full force and effect.

**Section 16.    Headings.**  The headings of sections and paragraphs herein are included solely for convenience and shall not control the meaning or interpretation of any of the provisions of this Agreement.

**Section 17.    Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, and/or legal representatives.

**Section 18.    Acknowledgement.**  Each of the Parties has investigated the facts pertaining to this settlement and this Agreement to the full extent that Party deems necessary.  In entering into this Agreement, none of the Parties has relied upon any representations or statements made by any other Party that are not specifically set forth in this Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the Parties have signed this Agreement, or caused this Agreement to be signed by their duly authorized respective representatives:

**DEBTOR PARTIES**

**1 MIN, LLC**

By:_____
   Michael Christ, its sole Member

**TWELFTH FLOOR, LLC**

      By:    1 MIN, LLC, its sole Member

        By:_____
         Michael Christ, its Sole Member

**HOTEL AT SOUTHPORT, LLC**

      By: Twelfth Floor, LLC, its sole Member

        By:    1 MIN, LLC, its sole Member

        By:_____
         Michael Christ, its Sole Member

**MICHAEL CHRIST**

_____

*[Signature to Cai et al. v. Hotel at Southport, LLC, et al. Settlement Agreement]*

24-01519-FPC11   Doc 215   Filed 09/22/25   Entered 09/22/25 15:22:47   Pg 13 of 27

**WF TRUST**

**WF CREL 2020 GRANTOR TRUST**

By: _____
Name: _____
Title: _____

*[Signature to Cai et al. v. Hotel at Southport, LLC, et al. Settlement Agreement]*

24-01519-FPC11   Doc 215   Filed 09/22/25   Entered 09/22/25 15:22:47   Pg 14 of 27

**PLAINTIFF PARTIES**

By: _____
Name: _____

*[Signature to Cai et al. v. Hotel at Southport, LLC, et al. Settlement Agreement]*

24-01519-FPC11   Doc 215   Filed 09/22/25   Entered 09/22/25 15:22:47   Pg 15 of 27

<u>**Schedule I**</u>

**Initial Plaintiff Parties**

1. LAN CAI
2. SHUJIE CHEN
3. TIANRAN CHEN
4. WEIJUN CHEN
5. JIE CHU
6. ZHAOJUN CONG
7. HE CUI
8. JIANYING DING
9. JICHUN DU
10. QING DU
11. JIEYING FENG
12. YUPENG GAO
13. YIRAN HAN
14. JINYANG HU
15. NAIXIN HU
16. XIAO HUANG
17. JUNMEI JIN
18. XIN MENG
19. WEIHONG LU
20. YUANYUAN MA
21. MIN PAN
22. LEI PEI
23. HAO QI
24. XIAO RONG
25. JUAN SHAO
26. HUI WANG
27. JINGYI WANG
28. YUQUAN WANG
29. ZIDONG WANG
30. RONGRONG WU
31. ZHAOHUI XU
32. QI XU
33. JIE YAN
34. KE YANG
35. QIN YANG
36. HONGYUN YU
37. SHUXIAN ZENG
38. XIAOHONG ZHANG
39. YING ZHAO
40. MINBO ZHOU
41. NAN ZHOU
42. HUIQING ZHU
43. ZILING ZENG
44. LUYI ZHANG
45. JUNDI LIANG
46. TAO LI
47. YUN CAI
48. HONGLIANG TANG
49. JIE TANG
50. WENLUNG CHEN
51. SHI ZHANG
52. JUN CHE
53. DAHE ZHANG
54. SHAN WAN
55. XIAOHONG SUN
56. YAN LYU A/K/A YAN LU
57. JIALIN TIAN
58. RUI TANG
59. XINHAN LIN
60. SIYU LIU
61. JIANYING MENG
62. PHUONG NGUYEN
63. YEQING PAN
64. XUERONG QI
65. QIANG WANG
66. HONGYING YU
67. DONGLI ZHANG

## <u>Schedule II</u>

## Unrepresented Plaintiffs

1. Wenyan Wang
2. Junli Wei
3. Yunfei Wu

**Exhibit A**

**Proposed Settlement Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re | Chapter 11 |
| 1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC, | Lead Case No. 24-01519 |
| Debtors. | (Jointly Administered) |
| | **[PROPOSED] ORDER GRANTING MOTION TO APPROVE SETTLEMENT WITH EB-5 PLAINTIFFS AND WF CREL 2020 GRANTOR TRUST PURSUANT TO BANKRUPTCY RULE 9019** |

**BEFORE THE COURT** is the *Motion to Approve Settlement with EB-5 Plaintiffs and WF CREL 2020 Grantor Trust Pursuant to Bankruptcy Rule 9019* (the "Motion")[1] filed by 1 Min, LLC (the "EB-5 Debtor"), Hotel at Southport, LLC (the "Hotel Debtor"), and Twelfth Floor, LLC (the "Mezz Debtor" and, together with the EB-5 Debtor and the Hotel Debtor, the "Debtors").

The Motion was made pursuant to Fed. R. Bankr. P. 9019. The Court considered the Motion, *Zhengbiao Li's Response to Debtors' Motion to Approve*

---

[1] Capitalized terms used but not defined in this Order have the meanings given in the Motion.

*Settlement and Application for Final Decree* [ECF No. 208] (the "Response"), and the arguments presented at the hearing.  Based on the foregoing, the Court hereby

**FINDS** and **DETERMINES** that:

A.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.      Proper, timely, adequate, and sufficient notice of the Motion and the hearing thereon was given.

C.      The Debtors have demonstrated that relief requested in the Motion is reasonable, in the best interests of the Debtors and their creditors, and represents an appropriate exercise of the Debtors' business judgment.

D.      The proposed settlement was negotiated, proposed, and entered into among the Debtors and the other parties thereto without collusion, through arms' length negotiations, and in good faith.

E.      The Response, to the extent it seeks relief inconsistent with this Order, is overruled.

**IT IS HEREBY ORDERED** that:

1.      The Motion is **GRANTED**.

2.      The Debtors are authorized to enter into and implement the *Settlement Agreement and Release* in the form attached to the Motion as **Exhibit A** (the "Settlement Agreement").  The Settlement Agreement is approved in all respects and

shall be fully enforceable against the Debtors and the other parties thereto in accordance with its terms.

3.     The 70 plaintiffs in the Adversary Proceeding (the "EB-5 Plaintiffs") collectively have an allowed general unsecured claim against the Hotel Debtor in the aggregate amount of six million dollars ($6,000,000.00) (the "Settlement Amount"). The Settlement Amount shall be the sole source of recovery from any property of the Debtors, reorganized Debtors, or their estates, for the EB-5 Plaintiffs, including with respect to any EB-5 Plaintiffs not party to the Settlement Agreement as of the entry of this Order.

4.     The allowed unpaid amount of WF Trust's secured Class 2 Claim against Mezz Debtor is not less than twenty-seven million six hundred thousand dollars ($27,600,000.00); provided that such amount shall be increased to the extent that additional interest accrues and additional attorneys' fees and other expenses are incurred, in each case, to the extent such amounts are payable by the Mezz Debtor in accordance with the terms of the applicable loan documents and the Confirmed Plan. Without limiting the generality of the foregoing, none of the EB-5 Plaintiffs or any other creditor of any of the Debtors shall have any right or ability to seek to recover such funds from WF Trust for any reason. Should the distribution to WF Trust pursuant to the Settlement Agreement be less than the amount of the allowed Class 2 Claim, such distribution shall not be in satisfaction of any such deficiency, but, instead, WF Trust shall remain and be entitled to receive payment of any such

deficiency from the proceeds of any other estate assets not necessary to adequately fund the Partnership pursuant to Section 6(a) of the Settlement Agreement.

5.      This Order constitutes an EB-5 Plaintiffs Claims Order as such term is used in the Confirmed Plan.

6.      The Plaintiff Parties' (as that term is defined in the Settlement Agreement) claims in the Adversary Proceeding are **DISMISSED WITH PREJUDICE**.

7.      To the extent applicable, the stay provided in Rule 6004(h) is hereby waived and this Order shall be effective and enforceable immediately upon entry.

**Presented by:**

**BUSH KORNFELD LLP**

By____Draft_____
    James L. Day, WSBA #20474
    Christine M. Tobin-Presser #27628
Jason Wax, WSBA #41944

***Attorneys for the Debtors***

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| In re | Chapter 11 |
|---|---|
| 1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC, | Lead Case No. 24-01519 |
| | (Jointly Administered) |
| Debtors. | **[PROPOSED] ORDER GRANTING MOTION TO APPROVE SETTLEMENT WITH EB-5 PLAINTIFFS AND WF CREL 2020 GRANTOR TRUST PURSUANT TO BANKRUPTCY RULE 9019** |

**BEFORE THE COURT** is the *Motion to Approve Settlement with EB-5 Plaintiffs and WF CREL 2020 Grantor Trust Pursuant to Bankruptcy Rule 9019* (the "Motion")[1] filed by 1 Min, LLC (the "EB-5 Debtor"), Hotel at Southport, LLC (the "Hotel Debtor"), and Twelfth Floor, LLC (the "Mezz Debtor" and, together with the EB-5 Debtor and the Hotel Debtor, the "Debtors").

The Motion was made pursuant to Fed. R. Bankr. P. 9019. The Court considered the Motion, *Zhengbiao Li's Response to Debtors' Motion to Approve*

---

[1] Capitalized terms used but not defined in this Order have the meanings given in the Motion.

*Settlement and Application for Final Decree* [ECF No. 208] (the "Response"), and the arguments presented at the hearing. Based on the foregoing, the Court hereby

**FINDS** and **DETERMINES** that:

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

B. Proper, timely, adequate, and sufficient notice of the Motion and the hearing thereon was given.

C. The Debtors have demonstrated that relief requested in the Motion is reasonable, in the best interests of the Debtors and their creditors, and represents an appropriate exercise of the Debtors' business judgment.

D. The proposed settlement was negotiated, proposed, and entered into among the Debtors and the other parties thereto without collusion, through arms' length negotiations, and in good faith.

E. The Response, to the extent it seeks relief inconsistent with this Order, is overruled.

**IT IS HEREBY ORDERED** that:

1. The Motion is **GRANTED**.

2. The Debtors are authorized to enter into and implement the *Settlement Agreement and Release* in the form attached to the Motion as **Exhibit A** (the "Settlement Agreement"). The Settlement Agreement is approved in all respects and

shall be fully enforceable against the Debtors and the other parties thereto in accordance with its terms.

3. The 70 plaintiffs in the Adversary Proceeding (the "EB-5 Plaintiffs") collectively have an allowed general unsecured claim against the Hotel Debtor in the aggregate amount of six million dollars ($6,000,000.00) (the "Settlement Amount"). The Settlement Amount shall be the sole source of recovery from any property of the Debtors, reorganized Debtors, or their estates, for the EB-5 Plaintiffs, including with respect to any EB-5 Plaintiffs not party to the Settlement Agreement as of the entry of this Order.

4. The allowed unpaid amount of WF Trust's secured Class 2 Claim against Mezz Debtor is not less than twenty-seven million six hundred thousand dollars ($27,600,000.00); provided that such amount shall be increased to the extent that additional interest accrues and additional attorneys' fees and other expenses are incurred, in each case, to the extent such amounts are payable by the Mezz Debtor in accordance with the terms of the applicable loan documents and the Confirmed Plan. Without limiting the generality of the foregoing, none of the EB-5 Plaintiffs or any other creditor of any of the Debtors shall have any right or ability to seek to recover such funds from WF Trust for any reason. Should the distribution to WF Trust pursuant to the Settlement Agreement be less than the amount of the allowed Class 2 Claim, such distribution shall not be in satisfaction of any such deficiency, but, instead, WF Trust shall remain and be entitled to receive payment of any such

deficiency from the proceeds of any other estate assets not necessary to adequately fund the Partnership pursuant to Section 6(a) of the Settlement Agreement.

5.    This Order constitutes an EB-5 Plaintiffs Claims Order as such term is used in the Confirmed Plan.

6.    The Plaintiff Parties' (as that term is defined in the Settlement Agreement) claims in the Adversary Proceeding are **DISMISSED WITH PREJUDICE**.

7.    To the extent applicable, the stay provided in Rule 6004(h) is hereby waived and this Order shall be effective and enforceable immediately upon entry.

**Presented by:**

**BUSH KORNFELD LLP**

By_____
    James L. Day, WSBA #20474
    Christine M. Tobin-Presser #27628
Jason Wax, WSBA #41944

*Attorneys for the Debtors*